# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

————————

m 00-20127

————————

THE PROCTER & GAMBLE COMPANY;
THE PROCTER & GAMBLE DISTRIBUTING COMPANY,

Plaintiffs-Appellants-
Cross Appellees,

VERSUS

AMWAY CORPORATION, ET AL.,

Defendants,

THE AMWAY DISTRIBUTORS ASSOCIATION COUNCIL,

Defendant-Appellee-
Cross-Appellant,

JA-RI CORPORATION,

Defendant-Appellee,

AND

INTERNET SERVICES CORPORATION,

Movant-Appellee-
Cross-Appellant.

Appeals from the United States District Court
for the Southern District of Texas

January 17, 2002

Before JOLLY, SMITH, and BENAVIDES,
   Circuit Judges.

JERRY E. SMITH, Circuit Judge:

The Procter & Gamble Co. ("P&G") appeals the award of attorneys' fees and costs to Ja-Ri Corporation ("Ja-Ri"), the Amway Distributors Association Council ("ADAC"), and Internet Services Corporation ("Internet") under 28 U.S.C. § 1927 and 15 U.S.C. § 1117(a). Concluding that the district court committed several errors, we vacate and remand.

I.

P&G manufactures and distributes numerous household products. Since the late 1970's and early 1980's, rumors of links to Satanism have circulated throughout the United States. A common version alleges that P&G's president admitted to worshiping Satan on a television talk show and that a portion of P&G's profits goes to the church of Satan. The rumor has circulated in the form of voicemail messages and printed fliers.

P&G alleges that Amway and its distributors started or spread the rumor in the 1980's and began spreading it again in the mid-1990's. Rather than suing Amway in the 1980's, P&G worked with Amway's corporate headquarters to stop the rumor. In 1995, however, the rumor resurfaced when Randy Haugen, an Amway Distributor, forwarded it to other Amway distributors via an internal telephone messaging system. Haugen served on the ADAC and was a very successful Amway distributor with a network of distributors throughout Utah, Nevada, Texas, Mexico, and Canada.

The rumor spread rapidly. Some distributors printed fliers containing the rumor and circulated them to consumers. P&G offered evidence that the number of Satanism rumors increased substantially in the states in which the majority of Haugen's distributors live.

Within days of learning that the rumor was false, Haugen sent out a short retraction on the voice messaging system. Shortly thereafter, an Amway representative contacted Haugen and delivered a copy of a P&G "truth kit," which explains that the rumor is false. Using the kit, Haugen sent out a second and more detailed retraction, but the rumor continued to spread for some time.

Amway's distributors make money both from selling Amway products to the general public and from recruiting other distributors. Newly recruited distributors become "downline" distributors who earn commissions for the "upline" distributors who recruited them. More senior and profitable distributors sell their products predominately to downline distributors rather than to consumers. There is high turnover among the more junior

2

distributors. The most elite and profitable distributors rely on the sale of motivational tools rather than Amway products to earn large profits.

P&G alleged that this structure constitutes an illegal pyramid scheme and gave upline distributors a possible motive to repeat the rumor to the downline distributors because it might affect the ability to recruit distributors and sell Amway products. The relationship of Amway distribution network to Ja-Ri, ADAC, and Internet remains a bit murky, but P&G unearthed evidence that the four entities have close ties.

## II.

In 1995, P&G filed a federal suit in Utah, alleging that Haugen, Freedom Associates, Inc., and Freedom Tools, Inc., circulated the Satanism rumor; P&G later joined Amway, Randy Walker, and Walker International Network as defendants. In 1996, P&G filed a second amended complaint alleging defamation, common law unfair competition, violations of the Utah Truth in Advertising Act, tortious interference, negligent supervision, and violations of the Lanham Act § 43(a), 15 U.S.C. § 1125(a), and vicarious liability. P&G then filed a third amended complaint alleging that Amway is an illegal pyramid and alleging fraud and product disparagement; the district court dismissed that complaint in 1997. Later in 1997, P&G filed a fourth amended complaint to assert fraud and disparagement claims, which the Utah court denied as untimely.[1]

On the day after the dismissal in Utah, P&G sued Haugen, Amway, ADAC, Ja-Ri, Internet, and other parties in Texas federal court, alleging that the defendants had (1) spread the Satanism rumor, (2) disparaged P&G's Crest toothpaste, and (3) harmed P&G's sales by luring people into Amway's illegal pyramid scheme as distributors. The complaint asserted various causes of action, including common law fraud, violations of the Lanham Act § 43(a), violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 28 U.S.C. § 1962(c)-(d), and violations of the Texas Business and Commerce Code § 16.29.

The Texas district court granted Amway's FED. R. CIV. P. 12(b)(6) motion dismissing the RICO claim because P&G had not alleged reliance on Amway's alleged predicate acts of mail and wire fraud. The court held that P&G lacked standing to bring its § 43(a) claim based on Amway's illegal pyramid scheme and that the statute of limitations had expired for the fraud claim. This dismissal eliminated Internet as a party to the suit, because P&G had asserted only the Lanham Act illegal pyramid scheme against Internet.

The remaining claims and parties went to trial. At the close of P&G's case, Amway moved for judgment as a matter of law ("j.m.l."). The court granted j.m.l. and

---

[1] In September 1998, the Utah district court granted defendants' joint motion for summary judgment and dismissed the § 43(a) claim, holding that the misrepresentation did not relate to a product within the meaning of the Lanham Act. In (continued...)

[1](...continued)
March 1999, the Utah court granted summary judgment to the defendants on the defamation *per se*, vicarious liability, and negligent supervision claims, then entered a final judgment dismissing all of P&G's claims. The Tenth Circuit reversed, *P&G v. Haugen*, 222 F.3d 1262 (10th Cir. 2000), and remanded for further proceedings on the Lanham Act disparagement and Utah state law disparagement claims.

dismissed the § 43(a) claim against Amway, Walker, and Haugen based on the res judicata effect of the Utah final judgment. The Texas court dismissed the § 43(a) claim for disparagement against the remaining defendants because the First Amendment requires, and the plaintiffs had failed to present, evidence of "actual malice." The court also dismissed the Texas Business and Commerce Code § 16.29 claim and all remaining claims. P&G appealed the decision on the merits.

The district court then issued three orders imposing sanctions on P&G by shifting attorneys' fees and costs. It granted sanctions to Ja-Ri in the form of all attorneys' fees expended after April 1999 (the "Ja-Ri sanctions order"), citing § 1927 as its authority for shifting fees. The court granted a fees motion in favor of ADAC, citing its authority under § 1927 and 15 U.S.C. § 1117 (the "ADAC sanctions order"). The court granted Internet's motion for all attorney's fees under §§ 1117 and 1927 (the "Internet sanctions order"). P&G brought the instant appeal to challenge the sanctions orders.

In *Procter & Gamble Co. v. Amway Corp. ("P&G I")*, 242 F.3d 539, *cert. denied*, 122 S. Ct. 329 (2001), we affirmed the decision on the merits in part, reversed in part, and vacated. (1) We reversed the rule 12(b)(6) dismissal of the RICO claims based on the predicate acts of mail and wire fraud in spreading the Satanism rumor. We affirmed the dismissal of the RICO claims based on the illegal pyramid scheme. *Id.* at 564-65. (2) We affirmed the summary judgment dismissing the Lanham Act illegal pyramid claims because P&G lacked standing. *Id.* at 562-63. (3) We reversed the j.m.l. that the Utah judgment has res judicata effect, because the Tenth Circuit

had reversed and remanded on the Lanham Act claim. We refused to give the Utah court's decision on vicarious liability preclusive effect as to the Lanham Act claims. *Id.* at 546. (4) We reversed the j.m.l. on the Lanham Act disparagement claim, concluding that the First Amendment does not require proof of "actual malice." *Id.* at 546-59. (5) We reversed the dismissal of the product disparagement claims under the Lanham Act and Texas Business and Commerce Code § 16.29. *Id.* at 565-66. (6) We upheld the dismissal of the common law fraud claims as barred by the statute of limitations. *Id.* at 566-67. (7) We upheld the dismissal of the alter ego, single business enterprise, and vicarious liability claims against Ja-Ri and ADAC.

The only claims currently before the district court relate to spreading the Satanism and Crest toothpaste rumors. The district court still must decide whether Amway and its distributors fraudulently spread the Satanism rumor and violated RICO, unlawfully disparaged P&G products under the Lanham Act, or unlawfully disparaged P&G products under Texas Business and Commerce Code § 16.29. P&G has never identified evidence that Ja-Ri, ADAC, or Internet spread the Satanism or Crest toothpaste rumor. In *P&G I*, we affirmed the decision that Ja-Ri and ADAC could not face alter ego, single business enterprise, or vicarious liability for the actions of Amway or downline distributors. 242 F.3d at 559-60. We may safely assume that none of the claims currently pending before the district court relates to Ja-Ri, ADAC, or Internet.

III.

P&G argues that the district court lacked jurisdiction to enter sanctions, because P&G already had appealed the final decision on the merits. Perfecting an appeal deprives the dis-

trict court of jurisdiction to hear matters connected to the appeal. *Offshore Logistics Servs., Inc. v. Mut. Marine Office, Inc.*, 639 F.2d 1168, 1170 (5th Cir. Unit A Mar. 1981).

The district court, however, retains jurisdiction to resolve motions for sanctions and attorneys' fees while a judgment on the merits is pending on appeal.[2] Such motions are collateral to the merits, so the appeal does not divest the district court of jurisdiction.[3] P&G argues that by attaching the label "Second Amended Final Judgment" to the

order resolving sanctions and attorneys' fees, the district court deprived itself of jurisdiction. P&G does not cite any authority for the proposition that the label alone should have this effect.

The district court did not alter the terms of its judgment on the merits and only repeated its earlier conclusions. Even if the court lacked jurisdiction to alter the judgment on the merits, it retained jurisdiction to resolve sanctions and fees issues; we decline to vacate and remand to force the district court to add a different label to the same order. That court plainly had jurisdiction to enter its order.

IV.

According to § 1927, a district court may shift reasonable fees to "any attorney" "who so multiplies the proceedings in any case unreasonably and vexatiously."[4] The court can shift fees only to counsel, not to parties.[5]

---

[2] *Thomas v. Capital Sec. Serv., Inc.*, 812 F.2d 984, 987 (5th Cir. 1987) ("[E]ven though the judgment on the merits has been properly appealed and is pending in the courts of appeal, the district court retains jurisdiction to entertain and resolve a motion requesting attorney's fees or sanctions."), *vacated in part, reinstated in part, and remanded on other grounds,* 836 F.2d 866 (5th Cir. 1988) (en banc); CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, 15B FEDERAL PRACTICE AND PROCEDURE § 3915.6, at 338 (West 2d ed. 1992) ("The rule that appeal can and must be taken upon final disposition of all matters other than attorney fees leaves the district court free to continue proceedings on the fee request pending appeal."). *Cf. Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 200-01 (1988) (declaring fee award separable from decision on the merits for purposes of FED. R. APP. P. 4's time limits for appeal); *Buchanan v. Stanships, Inc.*, 485 U.S. 265, 268 (1988) (holding that courts should not treat a motion for costs as a motion to alter or amend the judgment that tolls the time limits for filing an appeal).

[3] *Thomas*, 812 F.2d at 987. *Cf. Taylor v. Sterrett*, 640 F.2d 663, 668 (5th Cir. Unit A Mar. 1981) (explaining that interlocutory appeal does not divest district court of jurisdiction over matters not involved in the appeal, including attorneys' fees).

[4] Section 1927 provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

[5] *E.g.*, *Maguire Oil Co. v. City of Houston*, 143 F.3d 205, 208 (5th Cir. 1998) ("Because the award at issue in this case was imposed against the CitySSand not any of the attorneys involvedSSit plainly cannot be sustained under section 1927"); *Matta v. May*, 118 F.3d 410, 413-14 (5th Cir. (continued...)

5

The district court must find that the sanctioned attorney multiplied the proceedings both "unreasonably" and "vexatiously." *FDIC v. Calhoun*, 34 F.3d 1291, 1297 (5th Cir. 1994). This requires "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court." *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1992). Section 1927 only authorizes shifting fees that are associated with "the persistent prosecution of a meritless claim." *Browning v. Kramer*, 931 F.2d 340, 345 (5th Cir. 1991) (citation omitted) (internal quotation omitted). The courts often use repeated filings despite warnings from the court, or other proof of excessive litigiousness, to support imposing sanctions. *Nat'l Ass'n of Gov't Employees v. Nat'l Fed'n of Fed. Employees*, 844 F.2d 216, 224 (5th Cir. 1988). To prevent the courts from dampening "the legitimate zeal of an attorney in representing her client," *Browning v. Kramer*, 931 F.2d 340, 344 (5th Cir. 1991), we have interpreted § 1927 as penal and construed it in favor of the sanctioned party, *FDIC v. Connor*, 20 F.3d 1376, 1384 (5th Cir. 1994).

The district court must make detailed factual findings when imposing large sanctions in a complex case with an extensive record.[6] The

court must (1) identify sanctionable conduct and distinguish it from the reasons for deciding the case on the merits,[7] (2) link the sanctionable conduct to the size of the sanctions,[8] and (3) differentiate between sanctions awarded under different statutes.[9] Specific findings permit effective appellate review of the validity and amount of fees. *Browning*, 931 F.2d at 346.

To shift the entire cost of defense, the claimant must prove, by clear and convincing evidence, that *every facet* of the litigation was

---

[5](...continued)
1997) ("Unlike Rule 11, § 1927 sanctions are, by the section's plain terms, imposed only on offending attorneys; clients may not be ordered to pay such awards."); *Traveler's Ins. Co. v. St. Jude Hosp.*, 38 F.3d 1414, 1416 (5th Cir. 1994) (same).

[6] *Topalian v. Ehrman*, 3 F.3d 931, 936 & n.5 (5th Cir. 1993) (stating that large sanctions imposed in a complex case must be accompanied by detailed findings); *Smith Int'l, Inc. v. Tex. Commerce Bank*, 844 F.2d 1193, 1197 (5th Cir. (continued...)

[6](...continued)
1988) (stating that larger sanctions require more rigorous appellate review, requiring more detailed factual and legal findings).

[7] *Topalian*, 3 F.3d at 937 (stating that "the court must announce the sanctionable conduct giving rise to its order"); *Browning*, 931 F.2d at 346 ("Section 1927 is aimed at specific conduct and claims."); *Smith Int'l*, 844 F.2d at 1198 (distinguishing between decision on the merits and determination that legal claim was so frivolous as to justify sanctions for multiplying proceedings).

[8] *Connor*, 20 F.3d at 1385 (stating that district court must link conduct to fees shifted); *Topalian*, 3 F.3d at 937 ("The district court must demonstrate some connection between the amount of monetary sanctions it imposes and the sanctionable conduct by the violating party"); *Browning*, 931 F.2d at 346 (stating that findings must provide attorney with opportunity to challenge amount of fees shifted on appeal).

[9] *Topalian*, 3 F.3d at 931 (stating that district court has obligation to announce which legal rules or statutes give rise to which sanctions); *Browning*, 931 F.2d at 346 (explaining that § 1927 grants only limited authority to shift fees and requiring district courts to specify the sources of their authority for shifting fees).

patently meritless, *Nat'l Ass'n of Gov't Employees*, 844 F.2d at 223, and counsel must have lacked a reason to file the suit and must wrongfully have persisted in its prosecution through discovery, pre-trial motions, and trial, *Lewis v. Brown & Root, Inc.*, 711 F.2d 1287, 1292 (5th Cir. 1983), *clarified on reconsideration*, 722 F.2d 209 (5th Cir. 1984).

We review an order awarding sanctions under § 1927 only for abuse of discretion. *Mercury Air Group, Inc. v. Mansour*, 237 F.3d 542, 549 (5th Cir. 2001)**.** "A district court abuses its discretion if it awards sanctions based on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Walker v. City of Bogalusa*, 168 F.3d 237, 240 (5th Cir. 1999).

V.

The Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorney's fees to the prevailing party." 15 U.S.C. § 1117(a). The prevailing party must demonstrate the exceptional nature of the case by clear and convincing evidence. *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 65 (5th Cir. 1992). This court rarely has interpreted the requirements for a prevailing defendant to recover fees under section 1117(a), so we briefly review the relevant legal principles, relying on decisions from other jurisdictions.

Several courts have held that a party can recover under § 1117(a) only for work performed in connection with claims filed under the Lanham Act.[10] A court should

permit recovery for work on non-Lanham Act claims only if "the Lanham Act and non-Lanham Act claims are so intertwined that it is *impossible to differentiate* between work done on claims*." Gracie*, 217 F.3d at 1069-70 (citations omitted). Limiting the scope of § 1117(a) comports with the background rule in AmericaSSthe prevailing party usually cannot recover fees absent statutory authority. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975).

Courts permit prevailing plaintiffs to recover attorneys' fees under § 1117(a) if the defendant maliciously, fraudulently, deliberately, or wilfully infringes the plaintiff's mark. *Tex. Pig Stands, Inc. v. Hard Rock Café Int'l, Inc.*, 951 F.2d 684, 696-97 (5th Cir. 1992). The prevailing plaintiff must show "a high degree of culpability" by the defendant. *Id.* at 1305. We have used "bad faith" as a shorthand for conducting this inquiry, *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 556 (5th Cir. 1998), but we also have instructed district courts to consider all the facts and circumstances to determine whether a case is exceptional, *id.* at 555.

We have not articulated a very precise standard for determining when to award a prevailing defendant attorneys' fees. In *Fuji Photo Film Co., Inc. v. Shinohara Shoji*

---

[10] This court has not addressed this issue. The Sixth and Ninth Circuits, as well as a district court, have so held, however. *Gracie v. Gracie*, 217 F.3d (continued...)

[10](...continued) 1060, 1069-70 (9th Cir. 2000) (remanding for district court to apportion fees between Lanham Act and non-Lanham Act claims); *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1193 (6th Cir. 1997) (opining that "under 15 U.S.C. § 117(a), attorneys' fees are recoverable only for work performed in connection with claims filed under the Lanham Act"); *Neva, Inc. v. Christian Duplications Int'l, Inc.*, 743 F. Supp. 1533, 1543 (M.D. Fla. 1990) (same).

*Kabushiki Kaisha*, 754 F.2d 591, 601-02 (5th Cir. 1985), we affirmed the refusal to grant fees based on a finding that the plaintiff had brought the action in good faith, but we did not address the role of the objective merits of the plaintiff's suit in determining the existence of "exceptional" status.

On remand, the district court should consider the objective merits of the suit when determining whether P&G acted in good faith. In the context of prevailing plaintiffs, we have considered the existence or nonexistence of reasonable legal defenses probative of good or bad faith.[11] The vast majority of circuits have developed a separate test for prevailing defendants under § 1117(a) and permit district courts to consider directly the objective merits of the suit.[12] *Fuji Photo* precludes us from

doing so, but district courts nonetheless should consider the merits and substance of the civil action when examining the plaintiffs' good or bad faith. We review the award of attorneys' fees under the Lanham Act for abuse of discretion, and the court's finding as to whether the case is exceptional for clear error. *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 373 (5th Cir. 2000) (citation omitted).

---

[11] *Pebble Beach*, 155 F.3d at 556 (describing exceptional classification as inappropriate where a party presents a reasonable defense in good faith); *CJC Holdings*, 979 F.2d at 66 ("A district court normally should not find a case exceptional where the party presents what it in good faith believes to be a legitimate defense."); *Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA, Co.,* 112 F.3d 1296, 1305 (5th Cir. 1997) (refusing to infer that infringer had acted in bad faith where outcome hinged on difficult legal questions about gray market goods and parallel importers).

[12] The Fourth, Seventh, Eighth, Ninth, Tenth, and District of Columbia Circuits have refused to endorse symmetrical tests for prevailing plaintiffs and defendants; these courts permit district courts to consider the objective merits of the underlying suit as an independent factor. *Ale House Mgmt., Inc. v. Raleigh Ale House, Inc.*, 205 F.3d 137, 144 (4th Cir. 2000) (describing an open-ended, multifactor test for determining when prevailing defendants should recover fees); *Door Sys. Inc. v. Pro-Line Door Sys., Inc.*, 126 F.3d 1028, 1032 (continued...)

[12](...continued) (7th Cir. 1997) (Posner, J.) ("[A] suit can be oppressive because of lack of merit and cost of defending even though the plaintiff honestly though mistakenly believes that he has a good case and is not trying merely to extract a settlement based on the suit's nuisance value"); *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 123 (8th Cir. 1987) (reasoning that "the absence of bad faith is not alone determinative of the Lanham Act fee issue"); *Boney, Inc. v. Boney Serv., Inc.*, 127 F.3d 821, 827 (9th Cir. 1997) (finding that exceptional circumstances other than bad faith can justify shifting fees in favor of the prevailing defendant); *Nat'l Ass'n of Prof'l Baseball Leagues, Inc. v. Very Minor Leagues, Inc.*, 223 F.3d 1143, 1147 (10th Cir. 2000) (describing multifactor test that permits district court to consider objective and subjective reasonableness); *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant*, 771 F.2d 521, 526 (D.C. Cir. 1985) ("Something less than 'bad faith,' we believe, suffices to mark a case as 'exceptional.'").

Only the Second Circuit has endorsed *Fuji Photo*'s holding that to recover fees under § 1117(a), the defendant must prove the plaintiff brought the action in bad faith. *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 194-95 (2d Cir. 1996) (affirming because defendant had failed to show the action was brought in bad faith). *Cf. SecuraComm Consulting, Inc. v. Securacom, Inc.*, 224 F.3d 273, 280 & n.1 (3d Cir. 2000) (requiring evidence of subjective bad faith for prevailing plaintiff to recover fees for defendants' actions in bringing retaliatory suits in multiple fora).

## VI.

The sanctions orders in favor of Ja-Ri, ADAC, and Internet share two common, fatal flaws. First, the district court shifted fees and costs under § 1927 to P&G rather than to its counsel. Second, the court failed to specify which statute authorized shifting which fees, to separate the vexatious conduct or exceptional features from its reasons for deciding the claims on the merits, or identify the link between the objectionable conduct or exceptional claims and the fee award's size. Standing alone, these errors justify vacating and remanding. To provide guidance on remand, however, we review the propriety of the individual sanctions orders.

### A.

The district court shifted fees from Ja-Ri to P&G only under § 1927. The Ja-Ri sanctions order explains that P&G "vexatiously" and "unreasonably" multiplied the proceedings by "filing groundless claims, pursuing those claims through the discovery process, refusing to dismiss the Defendant from the case, and in the end, failing to offer any evidence during its case-in-chief supporting its allegations." Ja-Ri requested only the fees it had expended between the time it lost on the motion for summary judgment and the entry of j.m.l. The district court, however, shifted total fees and costs of $63,421 in favor of Ja-Ri.

On summary judgment and at trial, P&G presented evidence of the following links between Amway and Ja-Ri: (1) Amway's owners created Ja-Ri; (2) Amway and Ja-Ri share the same address and telephone number; (3) Amway and Ja-Ri both engage in the distribution of Amway products; (4) Amway pays its employees to provide administrative, accounting, and selling services for Ja-Ri; (5) Amway pays Ja-Ri's expenses; (6) Amway and not Ja-Ri compensates Ja-Ri's officers and directors; (7) members of Amway's founding families own both Ja-Ri and Amway and serve as their officers and directors; (8) Ja-Ri does not hold formal officer or director meetings; and (9) Amway delegated the express authority for Ja-Ri to control downline distributors by enforcing Amway's Rules of Conduct, taking corrective actions, or terminating a distributorship.

When Ja-Ri moved for summary judgment, the court considered the above evidence sufficient to create a fact question about participation in an illegal pyramid scheme, indirect liability for Amway's actions when spreading the rumor, and vicarious or *respondeat superior* liability for the actions of downline distributors. The court found that the close links between Amway, Ja-Ri, and downline distributors justified including Ja-Ri as a party at trial. Despite these conclusions at summary judgment, the Ja-Ri sanctions order labeled the legal claims "groundless" and declared that P&G should have dismissed Ja-Ri.

The court committed three errors in the Ja-Ri sanctions order. First, it assessed the sanctions against the party. We must remand for the court to determine whether P&G's counsel should bear these costs.[13]

---

[13] We remand where a district court obviously intended to levy sanctions for vexatiously and unreasonably multiplying the proceedings but accidentally sanctioned a party instead of an attorney. *Meadowbriar Home for Children v. Gunn*, 81 F.3d 521, 534 (5th Cir. 1996). We have reversed and rendered for levying sanctions on a party under § 1927 only in three circumstances: (1) (continued...)

Second, the court failed to explain which claims P&G pursued vexatiously and unreasonably. Several of these claims had potential merit. Ja-Ri does not contest its status as an upline distributor for Amway. Although we held in *P&G I* that P&G lacked standing to bring the Lanham Act illegal pyramid claim, we described the standing question as a close legal issue. *P&G I*, 242 F.3d at 560-61, 562 (describing two questions of first impression). P&G should not be penalized for forcing Ja-Ri to incur defense costs against a legal claim that rested on a solid factual basis and a close legal question.

In *P&G I*, we refused to consider the alter ego, single business enterprise, and vicarious liability claims against Ja-Ri because P&G did not present a coherent argument on appeal. *Id.* at 559-60. We noted that the alter ego and single business enterprise theories appeared implausible; P&G never offered proof of an inequitable result that would justify piercing the corporate veil or imposing alter ego or single business enterprise liability. We did not, however, address the merits of the vicarious

liability question. At summary judgment, the district court found that P&G created a fact question about Ja-Ri's vicarious liability for the actions of downline distributors. If, as Ja-Ri asserts on appeal, P&G failed to provide any factual basis for the claims at trial, the court should have explained that absence of support in its sanctions order. The record of the decisions on the merits cannot, standing alone, support the sanctions award.

Finally, the court did not provide an explanation for the amount of fees awarded. Ja-Ri requested only fees from the denial of the motion for summary judgment forward, but the court should have provided an explanation for assessing even these limited fees. If P&G failed to provide any support for its claims at summary judgment, the court could have granted Ja-Ri's motion for summary judgment,[14] but, instead, it refused Ja-Ri's motion for summary judgment and eventually imposed sanctions on P&G for failing to dismiss voluntarily the claims against Ja-Ri.

The court does not explain this duty to dismiss or its application to the case before it. Does a plaintiff who provides summary judgment evidence of liability bear the burden of dismissing a defendant if it cannot prove the claims at trial? Or, does the plaintiff have a right to present its weak evidence to a jury? Why did the district court impose much larger fees in favor of ADAC, using almost identical language? The scant explanation raises many questions and cannot justify imposing sanc-

---

[13](...continued)
We will render if we perform a detailed analysis under other doctrines that might permit sanctions and conclude that the sanctions lack all merit. *Maguire Oil*, 143 F.3d at 212; *Matta*, 118 F.3d at 413-14, 416. (2) We will render if the district court has already had the opportunity to correct the § 1927 sanctions during a prior remand. *Browning*, 931 F.3d at 344. (3) We will render if the district court does not identify a source for its authority to levy sanctions, we conclude that the court could not have intended to award sanctions under § 1927 because the court sanctioned a party, and the other grounds for sanctions lack merit. *Traveler's Ins.*, 38 F.3d at 1414, 1416; *Brezeale v. Smith*, 857 F.2d 258, 259-61 (5th Cir. 1988). None of these exceptions applies to this case.

[14] *Browning*, 931 F.2d at 345 ("[O]ne might well wonder how a case could be so frivolous as to warrant sanctions if it has sufficient merit to go to trial."); *Nat'l Ass'n of Gov. Employees, Inc.*, 844 F.2d at 223 (same).

tions in such an unusual posture; on remand, the court should reconsider its decision and should provide a more complete explanation for whatever decision it makes.[15]

B.

The ADAC sanctions order contains the same language justifying sanctions under § 1927, without any further explanation. The ADAC sanctions order, however, differs from the Ja-Ri sanctions order in two important ways. First, the court also identified § 1117(a) as a vehicle for shifting fees and costs. Second, the court shifted ADAC's entire costs for defending the litigation, from start to finish, thus imposing $307,002.96 in sanctions.

P&G presented the following evidence to link Amway and ADAC at summary judgment and trial: (1) The founders and current owners of Amway created the ADAC; (2) ADAC's membership consists solely of Amway distributors; (3) Amway participates in the selection of half the ADAC board members; (4) the ADAC board meets three times a year to consider ways to improve Amway distributorships and makes recommendations to Amway; (5) Amway officers unilaterally approve the minutes of ADAC meetings; (6) Amway officers routinely use ADAC letterhead to communicate with distributors; (7) Amway's documents and founders describe the relationship as a partnership; (8) ADAC establishes speaking guidelines and works in cooperation with Amway to develop rules and regulations; (9) ADAC's board serves as a tribunal for hearing grievances against distributors and makes recommendations to Amway. ADAC makes only recommendations to Amway, however, and lacks authority to discipline or sanction any distributor.

When ADAC moved for summary judgment, the district court found that P&G had created a fact issue as to whether ADAC could face indirect liability under Texas's "alter ego" or "single business enterprise" theory. The court considered the above evidence sufficient to demonstrate a close link between Amway and ADAC and to raise factual issues about indirect liability. Despite the court's earlier conclusions at summary judgment, the ADAC sanctions order reflects a belief that P&G's claims so lacked substance that P&G should not have impleaded ADAC.

The court committed the same errors under § 1927 that we identified in discussing the Ja-Ri sanctions award. First, the court impermissibly used § 1927 to sanction a party. Second, the court did not identify which legal claims lacked all merit or explain its reasons for imposing sanctions independently from its reasons for deciding the merits. Third, the court failed to justify the amount of the sanctions. It should have isolated specific unnecessary and dilatory proceedings; it then could have shifted the costs associated with those proceedings.

Moreover, the district court does not even begin to justify shifting all of ADAC's defense costs while shifting only a portion of Ja-Ri's defense costsSSa difference of over $200,000. The close relationship between Amway and ADAC appears to have justified impleading ADAC, and the court did not explain at what point the pursuit of this litigation became vexatious and unreasonable.

---

[15] A remand is the correct remedy where the district court has failed to offer an adequate explanation. *Connor*, 20 F.3d at 1385 (vacating and requesting explanation); *Schwarz v. Follodor*, 767 F.2d 125, 133 (5th Cir. 1985) (same).

The court also failed to make findings sufficient to justify sanctions under § 1117(a). First, the court did not separate the fees shifted under § 1927 from those shifted under § 1117(a). Second, the ADAC sanctions order does not restrict the fees shifted to those incurred in defense of a Lanham Act claim, and the court did not find that the Lanham Act and non-Lanham Act claims were too intertwined to disentangle. Third, the court provided only a cursory explanation for the reasons it believed that the case was "exceptional" or that P&G acted in bad faith.

### C.

The Internet sanctions order emphasizes that the district court had only P&G's Lanham Act illegal pyramid claim before it at summary judgment. The sanctions order then explains that the court disposed of that claim at summary judgment because P&G lacked standing to bring the claim. The Internet sanctions order concludes that "for all the above-mentioned reasons," P&G unreasonably and vexatiously multiplied the proceedings and acted in bad faith. The court shifted total costs and fees of $128,176.53 based on these findings.

P&G presented more tenuous evidence of Amway's connection with Internet: (1) Dexter Yager's three sons formed Internet and purchased the assets of Freedom Distributing Company, their father's tool company; (2) Internet provides business support materials to Amway distributors; and (3) Internet's success depends on selling Amway motivational materials. Internet, however, is not a downline distributor, and it has customers outside the Amway distribution network.

Although P&G presented the weakest factual case against Internet at summary judgment, the Internet sanctions order does not sufficiently justify shifting fees. In addition to repeating the mistakes made in the Ja-Ri and ADAC orders, the court failed to find that the case against Internet lacked factual support but, instead, relied on a recitation of its reasons for granting the motion for summary judgmentSSP&G's failure to satisfy the prudential standing requirements of the Lanham Act.

P&G's belief that it might have standing under the Lanham Act, however, could well be considered reasonable for purposes of § 1927. P&G certainly could have asserted the claim in good faith as defined by *Fuji Photo* and § 1117(a). The question of standing under the Lanham Act to sue for an illegal pyramid scheme was difficult and novel. *P&G I*, 242 F.3d at 560-61, 562. A party that predicates its legal claim on a controversial and unsettled legal theory should not face sanctions under either § 1927 or § 1117(a) when the court ultimately rejects the claim.[16]

The orders appealed from are VACATED and REMANDED for further proceedings as appropriate.

---

[16] *Calhoun*, 34 F.3d at 1299-1300 (finding party not subject to § 1927 sanctions where Supreme Court had decided issue adverse to party); *Hogue v. Royse City, Tex.*, 939 F.2d 1249, 1256 (5th Cir. 1991) (affirming finding that § 1927 sanctions were inappropriate where outcome depended on difficult *Erie* question).