IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-11295
_____

TRINITY GAS CORPORATION,

Plaintiff

J. VAN OLIVER,

Appellant

v.

CITY BANK & TRUST COMPANY OF NATCHITOCHES; ET AL,

Defendants

CITY BANK & TRUST COMPANY OF NATCHITOCHES,

Defendant - Appellee

_____

Appeal from the United States District Court
for the Northern District of Texas
No. 4:99-CV-1007-A
_____

November 19, 2002

Before KING[*], Chief Judge, and JOLLY and HIGGINBOTHAM, Circuit
Judges.

PER CURIAM:[**]

---

[*]  Chief Judge King concurs in the judgment only.

[**]  Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

On December 7, 1999, Trinity Gas Corporation ("Trinity") brought suit against City Bank & Trust Company of Natchitoches ("City Bank"), Sidney W. Sers ("Sers"), Patricia Sers, and Scriven Taylor asserting fraud, conspiracy, and conversion claims arising from an alleged relationship between Sers, Trinity's former chairman, and Joe Pierson, Jr., City Bank's president.

In July 2000, City Bank moved for summary judgment on all claims asserted against it by Trinity. The district court ultimately granted that motion for summary judgment in September 2000.

In August 2000, while City Bank's summary judgment motion was pending, City Bank moved for sanctions against Trinity and its attorneys under Rule 11 of the Federal Rules of Civil Procedure and under 28 U.S.C. § 1927 based on allegations in Trinity's complaint which City Bank claimed were unreasonable and vexatious and without adequate legal and evidentiary support. Trinity and its attorneys responded to the motion later that same month.

On July 19, 2001, more than ten months after the district court granted summary judgment in favor of City Bank on all claims and almost one year after City Bank filed its motion for sanctions, the district court granted City Bank's motion for sanctions in part: it imposed sanctions on one of City Bank's attorneys, Appellant J. Van Oliver, individually, based on a finding that Oliver had violated Rule 11(b)(2) and (3) and 28 U.S.C. § 1927. The court sanctioned Oliver under Rule 11 in the amount of $5,000 and called for further briefing on the appropriate sanction for his § 1927 violation. In late August 2001, the Court entered an order

2

sanctioning Oliver for the § 1927 violation in the amount of $ 59,688.97. The sanctions imposed under § 1927 shifted to Oliver, personally, City Bank's entire defense costs from the date that Trinity first filed a document bearing Oliver's signature. Oliver appeals both sanctions.

## ANALYSIS

We review a district court order imposing sanctions for abuse of discretion, and we will find an abuse of discretion if the district court based its order on either an erroneous view of the law or a clearly erroneous view of the evidentiary record.[1] Under Rule 11 of the Federal Rules of Civil Procedure, an attorney may be sanctioned for presenting any paper to a court without first conducting a reasonable inquiry into legal and evidentiary support for allegations, claims, and contentions contained therein.[2] In a similar vein, a court may shift attorneys fees and impose other sanctions under 28 U.S.C. § 1927, if the court finds "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court."[3] Further, to support a shift of all defense costs, as is the case here, it must be "shown with 'convincing clarity' that every facet of th[e] litigation was patently meritless."[4]

---

[1] Mercury Air Group, Inc. v. Mansour, 237 F.3d 542, 548 (5th Cir. 2001).

[2] See Fed. R. Civ. P. 11.

[3] Edwards v. General Motors Corp., 153 F.3d 242, 246 (5th Cir. 1998).

[4] Browning v. Kramer, 931 F.2d 340, 345 (5th Cir. 1991) (emphasis in original and citation omitted); see also Proctor & Gamble Co. v. Amway Corp., 280 F.3d 519, 526 (5th Cir. 2002) (same).

3

District courts are given broad discretion in imposing sanctions against attorneys under Rule 11 and § 1927,[5] but even broad discretion must be exercised within clear and reasonable limits.  As we have explained before, Rule 11 is not intended to unreasonably chill an attorney's enthusiasm or creativity in pursuing factual or legal theories.[6]  To this end, courts should not impose sanctions simply because one party ultimately lost on the merits in litigation; nor should courts use the wisdom of hindsight in ruling on a motion for sanctions under Rule 11 or § 1927.  Instead, the task for the district court under Rule 11 and § 1927 is only to decide whether an attorney has failed to conduct a reasonable inquiry into the law and the facts and comply with "an objective standard of reasonableness under the circumstances."[7]

Upon review of the record, the totality of the circumstances, and the obligation of Oliver to his clients, we must find that the district court abused its discretion in imposing drastic sanctions in this case.

First, we think that the district court erred as a matter of law when it held that Trinity's "claims are legally improper" based solely on the court's finding that the claims are "[w]ithout factual support."[8]  In past cases, we have expressly noted the

---

[5]     See, e.g., Cooter & Gell v. Hartmax Corp., 496 U.S. 384, 403-05 (1990).

[6]     See Thomas v. Capital Sec. Services, Inc., 836 F.2d 866, 988 (5th Cir. 1988)(en banc).

[7]     Federal Deposit Insurance Corp. v. Calhoun, 34 F.3d 1291, 1296 (5th Cir. 1994).

[8]     R.2466-67.

4

difference between the requirements of subdivisions (b)(2) and(b)(3) of Rule 11, and we have reversed district courts that blurred the two parts of the Rule.[9]  In this case, too, the district conflated subdivision (b)(2) & (b)(3) of Rule 11 and erroneously concluded that a factually unsupported claim was also necessarily one that is  unwarranted by existing law or by a non-frivolous legal argument for the extension, modification or reversal of existing law or the establishment of new law.

Second, we think that the district court clearly erred in holding that Oliver violated Rule 11 by presenting a complaint to the court without conducting a reasonable inquiry into basis of the allegations and other factual contentions contained therein.[10] Rule 11 makes clear that the exact nature of the inquiry required will always depend on the individual circumstances in each case. This inquiry usually will include specific factors such as how much the attorney had to rely upon his client for the factual support for the document; whether pre-filing investigation was feasible; the complexity of the factual and legal issues in question; and the need for discovery to develop the factual circumstances underlying

---

[9]    See FDIC v. Calhoun, 34 F.3d at 1298-99.

[10]    Oliver states in his brief that he did not personally draft or sign Trinity's original complaint; however, his name is clearly listed on the complaint before that of the signatory and he continuously appeared as a responsible attorney on all papers filed on Trinity's behalf.  Furthermore, he was designated lead counsel for Trinity on June 12, 2000.  Based on all of this uncontroverted evidence, Oliver clearly participated in "presenting" the complaint to the district court.  Accordingly, Oliver can be held liable for the complaint under Fed. R. Civ. P. 11.

the claim.[11] In drafting pleadings, an attorney is entitled to rely on his own personal knowledge as well as the objectively reasonable representations of his clients. In this case, the reasonableness of Oliver's inquiry to support his pleadings is manifested by his prior dealings with the parties in this case. Before filing this case, Oliver represented the plaintiffs in a shareholder-derivative action brought on behalf of Trinity against Trinity's former President, Sydney W. Sers, and he represented Trinity itself in an SEC enforcement action against Sers (in which the SEC obtained the temporary restraining order freezing assets belonging to Sers and his family at issue in this case). In addition, Oliver successfully intervened on behalf of Trinity in a lawsuit brought by City Bank in Louisiana state court against various parties. He also represented Trinity in various bankruptcy proceedings, as counsel to the Shareholders Committee. Thus, Oliver was intimately familiar with Sers, Trinity, City Bank, and alleged relationships among the three at the time this complaint was filed such that the reasonable inquiry component of Rule 11 is satisfied. Even if we set aside Oliver's affidavit (offering apparently true but untimely testimony about his own knowledge and beliefs regarding the parties, their alleged relationships with one another, and the factual background surrounding this case), the record still shows that Oliver reasonably relied on the statements and knowledge of his own clients in presenting Trinity's complaint to the court.[12]

---

[11] See Thomas v. Capital Sec. Services, Inc., 836 F.2d at 988.

[12] See, e.g., R.2438-41 (Aff. of William Ruth).

In fact, each of the "false" allegations cited by City Bank appear to have some reasonable evidentiary basis sufficient to withstand attack under Rule 11(b)(3). For example, Trinity's allegation that Sers had "a close relationship" with City Bank's President, Joe Pierson is clearly supported by information uncovered during the course of other litigation indicating that Sers and his family were prominent City Bank customers, that Pierson acted as the sole loan officer to Sers and the corporations that he controlled, and that the Bank often extended loans to Sers and his corporations under unusual conditions. Likewise, based on the Affidavit of William Ruth filed in this case and based on deposition testimony taken in other litigation, Trinity appears to have had a reasonable factual basis for alleging that Sers conspired with Pierson and City Bank fraudulently to transfer $800,000 in proceeds from an illegal sale of Trinity stock. Specifically, on December 8, 1997, Pierson did in fact arrange for City Bank to transfer $800,000 out of a City Bank account opened in the name of Sers's young daughter to an offshore bank account in the Cayman Islands belonging to Columbia Trinity, one of Sers's wholly owned companies. This action was taken only on Sers's oral and written request and apparently in contravention of general bank policies. Moreover, on the same day that this suspicious transfer occurred a district court entered a temporary restraining order freezing that account. Still further, Trinity and Oliver had evidence supporting Trinty's belief that City Bank and Pierson were

7

aware of Sers's problems with the SEC at the time of the supicious transfer.[13]

Finally, with respect to the § 1927 violation, we do not think that the record supports a determination that Oliver unreasonably and vexatiously multiplied the proceedings in this case simply by filing the original complaint and refusing to withdraw it prior to the disposition of City Bank's summary judgment motion. Certainly, the evidence will not support "with 'convincing clarity'" a determination "that every facet of th[e] litigation was patently meritless."[14]

---

[13] The district court stated that "there is no evidence that City Bank knew of the TRO" in its order granting City Bank's sanctions motion. However, a close reading of the original complaint reveals that Trinity only alleged "[u]pon information and belief" that "City Bank received notice from Mr. Sers and/or others that the SEC had filed a lawsuit commencing the SEC Enforcement Action." Thus, Trinity did not, as the district court said, ever make an allegation that City Bank knew about the granting of the TRO before it wired the $800,000. Because Trinity never made such an allegation, evidence of the bank's knowledge of the TRO is immaterial for the purposes of Rule 11.

[14] Browning v. Kramer, 931 F.2d 340, 345 (5th Cir. 1991) (emphasis in original and citation omitted); see also Proctor & Gamble Co. v. Amway Corp., 280 F.3d 519, 526 (5th Cir. 2002) (same).

We thus conclude that, for reasons we have briefly set forth, the district court abused its discretion in awarding sanctions.[15] Accordingly, the judgment of the district court is REVERSED, and judgment is RENDERED in favor or Oliver.

REVERSED and RENDERED.

---

[15]    As we said in Thomas v. Capital Security Service, Inc., 836 F.2d at 878, we review more rigorously severe sanctions such as those imposed against Oliver.