# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 2, 2009

Charles R. Fulbruge III
Clerk

No. 09-30064
Summary Calendar

ROY A. VANDERHOFF

Plaintiff-Appellant

v.

ALFONSO PACHECO, individually and in his official capacity as a medical
doctor at Avoyelles Correctional Center

Defendant-Appellee

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 1:05-CV-309

Before KING, STEWART, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Appellant Roy Vanderhoff challenges the district court's award of
$13,626.50 in attorney's fees under 42 U.S.C. § 1988 and 28 U.S.C. § 1927
against Vanderhoff and his attorney due to their conduct in litigation brought
under 42 U.S.C. § 1983. For the reasons set forth below, we REVERSE the
award.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

## I.  Facts

Vanderhoff filed a federal lawsuit in the Middle District of Louisiana on October 1, 2004 against the medical director of the Avoyelles Correctional Center[1] and an individual referred to only as "Dr Pacheco," alleging intentional indifference to a serious medical need under 42 U.S.C. § 1983.  Vanderhoff claimed that he had received a 2003 diagnosis at the Huey P. Long Medical Center indicating that he suffered from back conditions requiring surgery and that the doctor there made an appointment for him to have surgery with a specialist in Alexandria, Louisiana.  Vanderhoff alleged that on November 6, 2003, he saw Dr. Pacheco.  Vanderhoff alleged that at that meeting Dr. Pacheco ignored the order referring him to a specialist and placed him on work restrictions within the prison.  Vanderhoff claimed that Dr. Pacheco's failure to address his medical condition led to considerable pain and suffering and further compromised his health.

Significant confusion ensued after the case was filed: on January 27, 2005, the Middle District notified Vanderhoff that there was no proof of service; a waiver and notice were mailed to an individual, also named Dr. Pacheco, who did not treat Vanderhoff.  On February 10, 2005, a magistrate judge informed Vanderhoff that his case should have been brought in the Western District of Louisiana.  The case was transferred to the Western District on February 18, 2005.  The correct Dr. Pacheco was served shortly before the case's transfer, so he filed his answer in the Middle District, unbeknownst to Vanderhoff or his counsel.  On June 13, 2005, the district court provided notice of intent to dismiss for failure to prosecute.  The district court then ordered Vanderhoff, on June 30, 2005, to cure any deficiencies in his complaint by amending it; the court also ordered Vanderhoff to dismiss any deficient claims that he could not cure

---

[1] The medical director, Randy Prentice, was never served and was dismissed as a defendant without objection.

through amendment. Vanderhoff complied with the district court's order and filed an amended complaint on August 29, 2005, naming only Dr. Pacheco as a defendant. Hurricane Katrina hit New Orleans on August 29, 2005, and Vanderhoff's counsel fled. On October 12, 2005, the district court entered an additional notice of intent to dismiss for failure to prosecute, and the case was dismissed on November 1, 2005. The case was reinstated on December 6, 2005, and soon thereafter, Vanderhoff realized that Dr. Pacheco had been properly served in February 2005.

Dr. Pacheco filed a motion to dismiss on February 28, 2006, urging, among other things, that, even accepting all allegations as true, the complaint left no federal subject matter jurisdiction, that Vanderhoff failed to allege facts sufficient to establish a federal offense, and that Dr. Pacheco was entitled to qualified immunity.[2] Notably, Dr. Pacheco did not challenge as untrue the factual allegations contained in Vanderhoff's complaint. The district court granted Dr. Pacheco's motion and dismissed his lawsuit on June 16, 2006. On appeal, we reversed, with the mandate issuing on October 4, 2007. *Vanderhoff v. Prentice*, 251 F. App'x 861, 862 (5th Cir. 2007). A status conference was held on November 19, 2007, and the parties prepared for trial.

On November 27, 2007, Vanderhoff's counsel informally requested disclosure of his client's medical records from defense counsel. According to Dr. Pacheco's attorney's billing records, they obtained at least some of Vanderhoff's medical records (probably those from Avoyelles Correctional Center) in mid-January of 2008.[3] They did not provide these records to Vanderhoff. Vanderhoff

---

[2] The record indicates that the state of Louisiana appeared on behalf of Dr. Pacheco, and the state apparently did not contact Dr. Pacheco personally until January 28, 2008.

[3] They had requested the records on November 21, 2007. The time records for that day read: "Contacting prison to get cert. copies of medical records." Time records from January 18, 2008 and February 1, 2008 reflect making copies of medical records.

finally received a set of these prison records on May 23, 2008, which was soon after Dr. Pacheco filed his motion for summary judgment.[4]  After receiving largely illegible hospital records from the Huey P. Long Medical Center and navigating through the hospital bureaucracy, Vanderhoff's counsel finally received full copies of the requested medical records on August 1, 2008.[5] Vanderhoff's response to the motion for sanctions states that the hospital records showed that, between 2001 and 2002, Vanderhoff had complained of back pain and was examined both at the prison and the Medical Center and that when an MRI was taken, it showed dehydration and degeneration of the L-5 vertebrae. However, Vanderhoff's response conceded that the records provided no documentary support for Vanderhoff's allegations that a doctor at Huey Long Medical Center had provided a written recommendation or order on Vanderhoff's chart for surgery in Alexandria, Louisiana; in fact, there were no surgery orders in the hospital records.  Accordingly, on the same date he received these legible documents, Vanderhoff's counsel informed Dr. Pacheco and the court that he would not oppose the summary judgment motion.  The district court adopted the claims within the summary judgment motion, granted summary judgment, and dismissed Vanderhoff's lawsuit on August 4, 2008.

On August 18, 2008, without any advance notice, Dr. Pacheco filed a motion for attorney's fees under 42 U.S.C. § 1988 and 28 U.S.C. § 1927 and for sanctions against Vanderhoff's attorney under Rule 11 of the Federal Rules of

---

[4] The motion for summary judgment, filed May 20, 2008, was the first indication that some of Vanderhoff's claims were unsubstantiated by the medical records.

[5]  Counsel for each side have traded Rule 28j letters regarding when and whether Dr. Pacheco's attorneys received Vanderhoff's medical records.  Dr. Pacheco's summary judgment motion attached a stack of medical records from Avoyelles Correctional Center that included some records from Huey Long Medical Center.  Nevertheless, Dr. Pacheco's Rule 28j letter filed in August of 2009 states as follows: "[D]efendants do not have and have never had a copy of Roy Vanderhoff's records from Huey P. Long Hospital."  This statement raises the question of how Dr. Pacheco can argue that Vanderhoff's claims are meritless when he does not even have all the documentation bearing upon that issue.

Civil Procedure. The magistrate judge summarized the history of the litigation and referenced the district judge's adoption of Dr. Pacheco's claims that "plaintiff had no documented history of back pain and Dr. Pacheco had never been advised of any such pain by anyone." In fact, the medical records clearly indicate a history of back pain. Dr. Pacheco's own affidavit filed in support of summary judgment indicated that he treated Vanderhoff for back pain. This dispute centered on whether there were orders for surgery that were ignored (or findings consistent with a need for surgery), not whether Vanderhoff ever had back pain. The magistrate judge's mistaken belief that Vanderhoff never had back pain is a critical factual error that likely caused the erroneous entry of sanctions.[6]

Without finding any wrongdoing by Vanderhoff himself, and making no particular findings of fact, the magistrate judge found that his attorney was guilty of wrongdoing. The magistrate judge concluded that:

> [T]he case was as frivolous on the day it was dismissed on motion for summary judgment as it was on the day it was dismissed on motion to dismiss. Absolutely no evidence had ever been produced to support the unfounded claims and indeed no evidence had even been obtained by the plaintiff's attorney in over three years. Further, the case was dismissed short of trial, which is some evidence that it was without merit. . . . This is not a case where the evidence was simply weak, or where there was some, but not enough evidence. Here there was no evidence–the absence of which is no doubt the reason the plaintiff's attorney did not even bother to write a brief opposing the motion to dismiss and then chose not to oppose the motion for summary judgment which ultimately disposed of the case.

The magistrate judge found that Vanderhoff's claims were frivolous, unreasonable, and groundless and that his attorney had "unreasonably and vexatiously multiplied the litigation by not promptly investigating before filing

---

[6] Of course, a successful suit against Dr. Pacheco would require more than a showing that Vanderhoff suffered from back pain that was not alleviated by his care. However, in assessing whether this case was wholly frivolous, the fact that at least some of Vanderhoff's allegations had support in the medical records is relevant.

suit and by not promptly obtaining the single medical record that would prove or disprove his client's claims." The magistrate judge awarded attorney's fees under §§ 1927 and 1988, jointly and severally against Vanderhoff and his counsel, for the entire cost of Dr. Pacheco's representation and found a Rule 11 violation. The district court adopted the magistrate judge's ruling but denied Rule 11 sanctions. The district court probably denied Rule 11 sanctions because Dr. Pacheco's counsel wholly failed to comply with the "safe harbor" requirements of Rule 11 and, by the time the motion was filed, Vanderhoff's counsel had essentially disavowed his prior pleading.[7]  This appeal ensued.

## II.  Standard of Review

We review an order awarding sanctions under § 1927 for abuse of discretion. *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 526 (5th Cir. 2002).  "A district court abuses its discretion if it awards sanctions based on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Id.* (quoting *Walker v. City of Bogalusa*, 168 F.3d 237, 240 (5th Cir. 1999)). Similarly, the decision whether to award attorney's fees under 42 U.S.C. § 1988 is committed to the discretion of the district court. *See Dean v. Riser*, 240 F.3d 505, 507 (5th Cir. 2001).  The district court's findings of fact are subject to clear error review; however, we review de novo the conclusions of law underlying the grant or denial of attorney's fees. *See id.* (citations omitted).

---

[7] Despite the magistrate judge's belief that the motion itself was sufficient notice under Rule 11 and counsel "received all of the process to which he is due," defense counsel did not abide by the clear terms of Rule 11. *See* FED. R. CIV. P. 11(c)(2) ("The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.").  It is clear on this record that Rule 11 sanctions could not be awarded.

III. Discussion

A.    28 U.S.C. § 1927

A district court may shift reasonable fees to "[a]ny attorney . . . who . . . multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. Under the plain terms of that statute, then, these sanctions are imposed only on offending attorneys – clients may not be ordered to pay such awards. *Procter & Gamble* Co., 280 F.3d at 525; *see also Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc.*, 38 F.3d 1414, 1416 (5th Cir. 1994). Accordingly, we reverse the imposition of § 1927 liability on Vanderhoff.

To impose sanctions against an attorney, the district court must find that the sanctioned attorney multiplied the proceedings both "unreasonably" and "vexatiously." *Procter & Gamble Co.*, 280 F.3d at 525. This requires "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court." *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998). Section 1927 only authorizes shifting fees that are associated with "the persistent prosecution of a meritless claim." *Browning v. Kramer*, 931 F.2d 340, 345 (5th Cir. 1991) (quoting *Thomas v. Capital Sec. Serv., Inc.*, 836 F.2d 866, 875 (5th Cir. 1988)). Sanctions may not be imposed for mere negligence on the part of counsel. *Baulch v. Johns*, 70 F.3d 813, 817 (5th Cir. 1995). Because of the punitive nature of § 1927, it is strictly construed. *Id.* "To shift the entire cost of defense, the claimant must prove, by clear and convincing evidence, that *every facet* of the litigation was patently meritless, . . . and counsel must have lacked a reason to file the suit and must wrongfully have persisted in its prosecution through discovery, pre-trial motions, and trial . . . ." *Procter & Gamble Co.*, 280 F.3d at 526 (citations omitted).

Here, there are no findings of fact by the magistrate judge or the district court to give deference under clear error review; both judges simply concluded as a matter of law that Vanderhoff's claims were frivolous, unreasonable, and

groundless and that his attorney had "unreasonably and vexatiously multiplied the litigation." However, the conclusions of the magistrate judge, and the record before this court, are insufficient to establish "unreasonable" and "vexatious" conduct. There is no indication of bad faith or improper motive on the part of Vanderhoff's counsel. The court's conclusion was based upon a clearly erroneous assessment of the evidence – the mistaken belief that Vanderhoff never had back pain, a belief belied by Dr. Pacheco's own affidavit that he treated Vanderhoff for back pain. Indeed, the medical records eventually received by counsel support many of Vanderhoff's claims; for example, the medical records show that he had severe back pain, that he was sent for an MRI, that he was treated by Dr. Pacheco and sent to the Huey P. Long Medical Center, that he was assigned to "light duty," and that he was provided a cane to assist his walking.

Vanderhoff's counsel contends that he relied upon Vanderhoff's statement of what happened, specifically that he was referred for a surgery that never occurred. Despite Dr. Pacheco's high burden, he did nothing to establish that Vanderhoff never made the statement or that Vanderhoff's counsel's reliance on his client was unreasonable or made in bad faith. Indeed, Vanderhoff's testimony, upon which his counsel relied, attesting to his mistreatment is some evidence of mistreatment, even if it might not result in a jury verdict. The absence of written proof of two of his allegations does not necessarily indicate that the case was patently meritless or that counsel acted recklessly. Because there was no hearing or findings of fact by the court, no credibility determinations are presented for us to review. Instead, we have a record that much more supports a conclusion that the plaintiff's counsel abandoned his case when it became clear that he would not prevail at trial, than a conclusion that his case was groundless all along.

Of course, under Rule 11, plaintiff's counsel should have investigated his case before filing it. Such an investigation would usually include obtaining

documentary proof supporting, or disproving, his client's allegations prior to or soon after filing suit. Had Vanderhoff's counsel been more diligent, this litigation might have ended sooner, sparing the costs expended by the plaintiff, defendant, district court, and this court. But § 1927, unlike Rule 11, is not about mere negligence. *See Schwartz v. Million Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003). Rule 11, with its lower standard of culpability that permits sanctions for failure to conduct a reasonable inquiry, provides a "safe harbor" during which an attorney may correct his actions by withdrawing or correcting the challenged paper, claim, defense, contention or denial. *See* FED. R. CIV. P. 11(c)(2). Here, Vanderhoff's counsel took corrective action once his good faith belief in his client's allegations was challenged by the lack of documentary evidence – he did not further multiply the litigation nor persist in a meritless claim.[8] The whole point of Rule 11's "safe harbor" is to allow an attorney who is mistaken about the merits of his claim to withdraw it. Section 1927, by contrast, is about the intentionally wrongful or reckless counsel, not the one who is merely negligent or lacking in diligence.

Indeed, the record is devoid of the "repeated filings despite warnings from the court, or other proof of excessive litigiousness" that typically support imposing sanctions under § 1927. *Procter & Gamble Co.*, 280 F.3d at 525. There is simply insufficient evidence in the record to establish that Vanderhoff's counsel was guilty of "reckless disregard of the duty owed to the court." When it became clear that the documents did not support the allegations in the complaint, Vanderhoff's attorney promptly alerted opposing counsel and the court, and he indicated that he did not oppose summary judgment. In short,

___

[8] It is noteworthy that Vanderhoff's counsel had a difficult time obtaining the medical records. Vanderhoff argues that Dr. Pacheco should have supplied the records. Dr. Pacheco's brief to this court contends that he asked for a medical release from Vanderhoff and never received it. However, he does not cite any record support for this contention, and Vanderhoff denies such a request was made.

there is no evidence to support a finding that the attorney acted both unreasonably and vexatiously. Accordingly, we reverse the imposition of sanctions under § 1927.

B.        42 U.S.C. § 1988

Under § 1988(b), a court "in its discretion, may allow the prevailing party" in a civil rights action to collect "a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). This section was enacted, in large part, to assure effective access to the judicial process for persons with civil rights grievances; such policy considerations are generally absent for prevailing civil rights defendants. *Dean*, 240 F.3d at 507. While a prevailing plaintiff is awarded attorney's fees in all but special circumstances, "attorney's fees for prevailing defendants are presumptively unavailable unless a showing is made that the underlying civil rights suit was vexatious, frivolous, or otherwise without merit." *Id*. at 508. "The plaintiff's action must be meritless in the sense that it is groundless or without foundation." *Hughes v. Rowe*, 449 U.S. 5, 14 (1980). This is a significant burden, and the record and findings of the magistrate judge do not support it in this case.

As an initial matter, there are no findings of fact that the plaintiff himself was guilty of wrongdoing. There is no evidence that Vanderhoff acted in bad faith, that he knowingly instituted a meritless claim, or that he misled the district court or his attorney. The only suggestion of wrongdoing is contained in the magistrate judge's citation to the district court's incorrect statement that "plaintiff had no documented history of back pain and Dr. Pacheco had never been advised of any such pain by anyone." This statement is mistaken. Vanderhoff's case, although ultimately dismissed, was not wholly groundless and without foundation. Indeed, until Dr. Pacheco's motion for summary judgment was filed, he did not indicate in the record that the facts alleged by Vanderhoff were incorrect, only that they did not support a federal cause of action.

10

Moreover, the fact that the written record did not contain evidence supporting Vanderhoff's claims does not establish that they were untrue or purposely false.

As we have previously stated, the factual allegations in Vanderhoff's complaint were sufficient to survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Vanderhoff*, 251 F. App'x at 862 ("It is not yet apparent beyond doubt that Vanderhoff could prove no set of facts consistent with his complaint that would allow him relief."). Many of these allegations are substantiated by his prison records. The absence of a written record does not disprove Vanderhoff's version of events; it simply makes it difficult for the plaintiff to prevail at trial. Although his case was dismissed on summary judgment, there is insufficient evidence to find that Vanderhoff's civil rights suit was vexatious, frivolous, or otherwise without merit. Accordingly, the imposition of sanctions against him under § 1988 was an abuse of discretion.

The magistrate judge's central holding was that the actions of plaintiff's counsel were improper because he failed to conduct the due diligence necessary to prove or disprove his client's allegations and that the underlying claims were frivolous, unreasonable, and groundless. While counsel's lack of preparation is regrettable and possibly violative of Rule 11, there is no indication that Vanderhoff's counsel was aware that there was no documentary support for his client's claims; he certainly was not alerted to this possibility by defense counsel until late May of 2008. From his perspective, at the time he filed suit, he was representing a client who made specific factual allegations of wrongdoing by a prison medical center and doctor, and those allegations were sufficient to state a federal cause of action. *See Vanderhoff*, 251 F. App'x at 862. At that point, the litigation was not wholly groundless or without foundation. When it became clear through counsel's investigation that at least some of the allegations in the complaint were unsubstantiated by the medical records, he promptly took corrective action. Any lack of diligence in investigating and substantiating those

11

allegations in the first place does not establish that the litigation itself was groundless or without foundation. *See Hughes*, 449 U.S. at 14. Accordingly, imposing sanctions under § 1988 against plaintiff's counsel was an abuse of discretion.

## IV.  Conclusion

Because the evidence does not support a finding that counsel's conduct multiplied the proceedings unreasonably and vexatiously, and the record does not establish that the underlying civil rights suit was vexatious, frivolous, or otherwise without merit, we REVERSE the order of the district court.