United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 1, 2007**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 05-30437

CAMBRIDGE TOXICOLOGY GROUP INC.,

Plaintiff-Appellant-Cross-Appellee,

versus

VAL EXNICIOS, ET AL.,

Defendants-Appellees-Cross-Appellants.

_____

CAMBRIDGE TOXICOLOGY GROUP INC.,

Plaintiff-Appellant-Cross-Appellee,

versus

MISSISSIPPI LITIGATION GROUP; ET AL.,

Defendants,

MISSISSIPPI LITIGATION GROUP,

Defendant-Appellee,

VAL EXNICIOS, ET AL.,

Defendants-Appellees-Cross-Appellants.

1

Consolidated with

---

No. 06-30397

---

CAMBRIDGE TOXICOLOGY GROUP INC.; THE LAW OFFICE OF PAUL C. MINICLIER; PAUL C. MINICLIER, ESQ.,

Plaintiffs-Appellants-Cross-Appellees,

versus

VAL EXNICIOS, ET AL.,

Defendants-Appellees-Cross-Appellants.

---

CAMBRIDGE TOXICOLOGY GROUP INC.; THE LAW OFFICE OF PAUL C. MINICLIER; PAUL C. MINICLIER, ESQ.,

Plaintiffs-Appellants-Cross-Appellees,

versus

MISSISSIPPI LITIGATION GROUP, ET AL.,

Defendants,

VAL EXNICIOS, ET AL.,

Defendants-Appellees-Cross-Appellants.

---

Appeal from the United States District Court
for the Eastern District of Louisiana

---

Before JONES, Chief Judge, and BENAVIDES and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

This appeal involves a contractual dispute between Cambridge Toxicology Group, Inc. ("Cambridge Toxicology") and a group of attorneys. The parties litigated this case before a jury, and now, both Cambridge Toxicology and the defendant attorneys appeal several rulings of the district court on multiple grounds. We affirm the district court's judgments.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit stems from a chemical release at the Gaylord Chemical Plant in Bogalusa, Louisiana. A team of attorneys, informally known as the Mississippi Litigation Group ("Litigation Group"), represented the victims of the chemical exposure. The Litigation Group retained Cambridge Toxicology to provide expert services in the Mississippi personal injury litigation. In 1998, Cambridge Toxicology and the Litigation Group entered into three contracts: (1) a contract to perform a control study; (2) a contract for Dr. Schrager to testify at a trial in Mississippi; and (3) a contract to evaluate the individual plaintiffs. Eventually, the Litigation Group withheld payment on the control study agreement, and the parties dispute whether Cambridge Toxicology completed the control study.

Cambridge Toxicology filed suit in Massachusetts, but the federal district court dismissed the case for lack of personal jurisdiction. Shortly thereafter, in May 2002, Cambridge Toxicology sued the defense attorneys in the Eastern District of Louisiana, alleging three counts of breach of contract, quantum meruit, promissory estoppel, violation of the Massachusetts unfair business practice statute, and failure to pay a past due account. Cambridge Toxicology's First Amended Complaint added a

3

cause of action under the Louisiana Open Account Statute. In June 2002, Cambridge Toxicology filed a Second Amended Complaint.

The district court set a trial date for October 14, 2003, and a deadline to amend pleadings for October 30, 2002. Cambridge Toxicology moved for leave to file a Third Amended Complaint in August 2003, ten months after the deadline for amendments. The amendment sought to add the Litigation Group as a defendant and to add several causes of action. The magistrate judge denied this motion due to the expired deadline, lack of good cause, the pending trial date, and the fact that Cambridge Toxicology filed pleadings referring to the Litigation Group as early as November 2002. The district court denied Cambridge Toxicology's appeal and continued the trial date to allow settlement discussions.

On October 24, 2003, the district court granted motions for summary judgment filed by the defendants, holding that Louisiana law governed the contracts; dismissing the claim under the Massachusetts unfair trade practices statute; and holding that the control study and trial testimony agreements were not open accounts under the Louisiana Open Account Statute. On November 4, 2003, the district court continued the trial without setting a new date but later ordered that all current deadlines would remain in place. Cambridge Toxicology moved once again for leave to file its Third Amended Complaint. The magistrate judge again denied the motion; and the district court denied Cambridge Toxicology's appeal of the magistrate judge's order. The court reiterated that the trial date continuances were not meant to allow for further discovery or amended pleadings.

Despite these denials and warnings, on July 21, 2004, Cambridge Toxicology filed another lawsuit against the same defendant attorneys, including the Litigation Group as a defendant. The causes of action were the same or substantially similar to those brought in the original action. On

October 24, 2004, the court granted the defendants' motion to dismiss Cambridge Toxicology's second action as duplicative of the original action. The court also warned Cambridge Toxicology's counsel that sanctions would be imposed for any additional frivolous or harassing tactics. Following a status conference on November 18, 2004, the court entered an order prohibiting further motions for reconsideration absent clear error or an abuse of discretion and issued a sanctions warning. Undeterred by the district court's order, Cambridge Toxicology filed a Reply to Counterclaim, Counterclaim, and Third-Party Demand on December 9, 2004, reasserting various claims against the defendants and the Litigation Group. The court granted the defendants' motion to strike this pleading as duplicative.

In January 2005, the district court commenced a jury trial on the merits. The jury found that (1) the defendants did not owe Cambridge Toxicology any amounts under the control study agreement; (2) Cambridge Toxicology did not fail to perform its obligation under the control study agreement; (3) the claims for payment under the control study agreement were premature; and (4) the claims for payment under the individual evaluation agreements were not premature. The jury awarded Cambridge Toxicology over $98,000 in damages.

The district court granted defendants' post-trial motions in part, holding that Cambridge Toxicology was not entitled to attorney's fees for the evaluation contract under the Louisiana Open Account Statute because the amounts claimed and the amounts actually awarded by the jury were inconsistent. The court also amended the wording of the judgment but rejected the defendants' arguments that the evidence showed breach of the control study agreement and that the findings of prematurity were inconsistent with the verdicts. Both parties appealed the district court's judgment in case number 05-30437.

Meanwhile, the defendants moved for costs, expenses, and attorney's fees in the district court. The court accepted the magistrate judge's recommendation and awarded the defendants over $27,000 in attorney's fees and costs pursuant to 28 U.S.C. § 1927 against Cambridge's counsel, Paul Miniclier, for filing duplicative harassing pleadings. Both parties, including Cambridge Toxicology's legal representative, Miniclier, now appeal the district court's judgment in case number 06-30397.

II. DISCUSSION

A.

This court reviews de novo the district court's grant of summary judgment. *See Gold, Weems, Bruser, Sues & Rundell v. Metal Sales Mfg. Corp.*, 236 F.3d 214, 217 (5th Cir. 2000). The district court held that the Louisiana Open Account Statute, La. Rev. Stat. Ann. § 9:2781, did not apply to the control study and trial testimony agreements. Cambridge Toxicology argues that the district court erred in concluding that its one-time rendition of professional services did not establish an ongoing relationship between the parties. To the contrary, defendants argue that the contracts did not create a line of credit subject to future adjustment because the parties did not share an ongoing debtor-creditor relationship.

An open account "includes any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transaction." § 9:2781(D). This includes debts incurred for professional services beyond legal or medical services. *Id.* Louisiana courts, based on BLACK'S LAW DICTIONARY, define an open account as "[a]n account which has not been finally settled or closed, but is still running or open to future adjustment or liquidation. Open account, in legal as well as in ordinary language, means an indebtedness subject to future adjustment, and which may be reduced

6

or modified by proof." BLACK'S LAW DICTIONARY 18 (6th ed. 1990); *see, e.g. Dixie Mach. Welding & Metal Works, Inc. v. Gulf States Marine Tech.*, 692 So. 2d 1167, 1169-70 (La. Ct. App. 1997). The Louisiana Open Account Statute also provides for reasonable attorney's fees incurred in the prosecution and collection of an open account. See § 9:2781(A). The open account law is penal in nature and must be strictly construed. *Frank L. Beier Radio, Inc. v. Black Gold Marine, Inc.,* 449 So. 2d 1014, 1016 (La. 1984).

A claim for breach of contract and a claim under the open account statute are considered distinct causes of action. *See Operational Tech. Corp. v. Envtl. Contractors, Inc.*, 665 So. 2d 14, 15 (La. Ct. App. 1995). An open account is "similar to a line of credit," *Hayes v. Taylor*, 812 So. 2d 874, 878 (La. Ct. App. 2002), and requires "an ongoing relationship with an extension of credit to the debtor," *Salley v. Colonial Marine Indus., Inc.*, 680 So. 2d 1242, 1252 (La. Ct. App. 1996). Louisiana courts use four factors to determine whether a course of dealing qualifies as an open account: (1) whether there were other business transactions between the parties; (2) whether a line of credit was extended by one party to the other; (3) whether there are running or current dealings; and (4) whether there are expectations of other dealings. *Paz v. BG Real Estate Servs., Inc.*, 921 So. 2d 186, 188 (La. Ct. App. 2005).

The control study agreement represents a contract, not an open account. Cambridge Toxicology and the defendant attorneys entered into a one-time contractual agreement. The contract required Cambridge Toxicology to perform the study in exchange for an agreed-upon sum certain. Although the statute permits recovery based on a single transaction, this feature alone does not subject the agreement to the open account statute. Cambridge Toxicology argues that a later compromise to defer payment until after the trial established a line of credit. In this instance,

however, the deferred payment merely modified the originally agreed upon payment due date without establishing a line of credit. *See, e.g. Hayes*, 812 So. 2d at 878. Moreover, the parties memorialized their other dealings in two separate contracts, establishing that each transaction had definitive terms as opposed to the one contract encompassing the cost of all services provided via this business relationship. *See, e.g., Tyler v. Haynes,* 760 So. 2d 559, 563 (La. Ct. App. 2000).

Similarly, the trial testimony agreement is a contract as opposed to an agreement subject to the open account statute. Cambridge Toxicology asserts the same argument regarding this agreement as asserted for the study, contending that the parties shared an ongoing relationship and that a line of credit existed because Cambridge Toxicology invoiced the defendant attorneys at regular intervals. Cambridge Toxicology never extended a line of credit, however, as contemplated under the open account statute, and more importantly, the contract involved testimony for a single trial. The district court made a factual finding that the parties expected Dr. Schrager to testify at only one trial as reflected in the contract for Dr. Schrager's services. Cambridge Toxicology provides no evidence that this finding constitutes clear error. More importantly, based on our review of the record, we find nothing to contradict the notion that Cambridge Toxicology and the defendants entered into an agreement for Dr. Schrager to prepare and present expert testimony at only one trial. The record does not support Cambridge Toxicology's contention that Dr. Schrager was to testify at any future proceedings. *See Haynes*, 760 So. 2d at 563 (Open accounts are "open to future modification because of expectations of prospective business dealings. Services are recurrently granted over a period of time."). Accordingly, we conclude that the control study and trial testimony agreements are not subject to the open account statute.

8

B.

This court reviews de novo the district court's grant of judgment as a matter of law. *Fiber Sys. Int'l, Inc. v. Roehrs,* 470 F.3d 1150, 1160 (5th Cir. 2006). The district court denied attorney's fees to Cambridge Toxicology on the individual evaluations contract, which is subject to the open account statute, because it did not demand the correct amounts. Cambridge Toxicology demanded over $254,000, but the jury awarded $58,000, a discrepancy of nearly $200,000.

To receive attorney's fees, the Louisiana Open Account Statute requires the claimant to send a "written demand therefore correctly setting forth the amount owed." § 9:2781(a). This court noted in *Haynes* that Louisiana courts interpret the "correct amount" requirement with "great stringency," requiring that if a "claimant's bill is adjusted by the court to any degree whatsoever, that claimant is held to have failed to meet the statutory requirement of giving notice as to the correct amount owed." 802 F.2d at 829 (citing cases); *see also Hub Detectives, Inc. v. Martinez*, 515 So. 2d 663, 666 (La. Ct. App. 1987). On the other hand, Louisiana cases also provide that "[t]he amount stated in the demand letter and the amount recovered in the judgment do not have to be the same for a party to recover attorney's fees." *Sears, Roebuck & Co. v. Larose*, 460 So. 2d 8, 9 (La. Ct. App. 1984). Louisiana courts have followed this rule in cases wherein the discrepancy arises from accrued interest, *see id.*, or from credits allowed for additional payments, *see Guidry's Seafood Distribs., Inc. v. Farmers Seafood Co., Inc.*, 759 So. 2d 806, 809 (La. Ct. App. 1999).

Here, the jury awarded almost $200,000 less than Cambridge Toxicology demanded in its complaint. The district court correctly concluded that such a significant discrepancy precludes a finding that Cambridge Toxicology attempted to set forth the accurate amount owed on the account. *See Haynes*, 802 F.2d at 830 (affirming denial of attorney's fees where discrepancy between amount

9

demanded and amount awarded was $14,000).  A contrary holding would conflict with Louisiana's

"correct amount" requirement; for this reason, Cambridge Toxicology is not entitled to attorney's

fees.

C.

The district court concluded that Louisiana law governed the contract and granted summary

judgment to the defendants on Cambridge Toxicology's claim brought under the Massachusetts unfair

trade practices law.  We conduct a de novo review of choice-of-law issues such as those raised in this

appeal.  *R.R. Mgmt. Co. v. CFS La. Midstream Co.*, 428 F.3d 214, 221-22 (5th Cir. 2005).

Cambridge Toxicology contends that the court should have applied the choice-of-law rule for

delictual obligations because its Massachusetts claim sounds in tort, not contract.  Cambridge

Toxicology also argues that the district court erred by failing to perform a separate choice-of-law

analysis for each cause of action, a concept known as depecage, because the case involves three

contracts.

A federal court sitting in diversity applies the choice-of-law rules of the forum state.  *Erie R.

Co. v. Tompkins*, 304 U.S. 64 (1938); *R.R. Mgmt. Co.,* 428 F.3d at 222.  The district court applied

the Louisiana choice-of-law rule for conventional obligations.  Article 3537 of the Louisiana Civil

Code, provides that

> Except as otherwise provided in this Title, an issue of conventional obligations is
> governed by the law of the state whose policies would be most seriously impaired if
> its law were not applied to that case.

> The state is determined by evaluating the strength and pertinence of the relevant
> policies of the involved states in the light of: (1) the pertinent contacts of each state
> to the parties and the transaction, including the place of negotiation, formation, and
> performance of the contract, the location of the object of the contract, and the place
> of domicile, habitual residence, or business of the parties; (2) the nature, type, and

10

purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.

LA. CIV. CODE ANN. art. 3537.

As to whether the district court applied the proper choice-of-law provision, LA. CIV. CODE art. 3542 reads in pertinent part that

Except as otherwise provided in this Title, an issue of delictual or quasi-delictual obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.

The substance of both choice-of-law articles, respectively governing torts and contracts, require substantially the same determination by the district court. "Both articles require the courts assess which state's policies would be most seriously impaired if its laws were not applied to that issue and both articles direct the court to evaluate the strength and pertinence of the relevant [state] policies in light of . . . the pertinent contacts of each state to the parties." *Robinson v. Am. Marine Holdings, Inc.*, 2002 WL 873185, *4 (E.D. La. 2002). Thus, even assuming the district court erred in applying art. 3537, we review the substance of the district's analysis to determine whether the court properly applied Louisiana law.

The following factors weigh in favor of applying Massachusetts law: (1) Cambridge Toxicology is domiciled in Massachusetts; (2) the control study was to be completed in Massachusetts; and (3) the defendants contacted Cambridge Toxicology in Massachusetts by telephone. On the other hand, several factors weigh in favor of Louisiana's interest. First, the defendant attorneys primarily lived in Louisiana. Second, the victims of the chemical exposure also lived in Louisiana, where Cambridge Toxicology was to evaluate the victims. Third, the chemical

11

exposure giving rise to the underlying litigation occurred in Louisiana. In sum, as recognized by the district court, the parties entered into the three contracts for the sole purpose of Cambridge performing work for a group of mostly Louisiana attorneys representing Louisiana residents for alleged injuries arising out of a chemical release that occurred in Louisiana. Moreover, despite Cambridge Toxicology's domicile, the contract required Cambridge Toxicology to spend extended periods of time in Louisiana for the individual evaluations, and the conduct causing Cambridge Toxicology's alleged injury occurred in Louisiana. For these reasons, we affirm the district court's application of Louisiana law.

To briefly address Cambridge Toxicology's final argument, even recognizing that Louisiana analyzes each claim separately, the defendants requested that the district court grant summary judgment on two issues: (1) count six of Cambridge Toxicology's complaint regarding whether Massachusetts law applied to the subject contracts; and (2) whether Cambridge Toxicology's claim is a suit on an open account. The trial court then conducted a proper choice of law analysis for count six, the unfair trade practices claim, and determined that the substantive law of Louisiana applied.

In this appeal, Cambridge Toxicology now argues that "the district court improperly analyzed the three separate contracts by lumping them together." The trial court needed not conduct the analysis for each individual contract because Cambridge Toxicology pleaded this count in general language stating that defendants "engaged in unfair business practices . . . by, among other things, failing to pay the plaintiff for the amounts due and owing and by using false and deceptive means in an effort to avoid paying legitimate debts." Just as Cambridge Toxicology presented this claim in a single count, not distinguishing the defendants' alleged tortious behavior as related to each contract, the district court appropriately disposed of the issue in a single analysis. The remaining issues decided

12

by the October 24, 2003 order and reasons involved whether the contested contracts qualify as open accounts under the Louisiana Open Account Statute; thus, the terms of the second issue inherently vitiate any need for a choice-of-law analysis.

D.

Although Cambridge Toxicology previously amended its complaint on two occasions, it sought to amend a third time in November 2003, over one year after the expiration of the deadline for amendments. The district court affirmed the magistrate judge's denial of Cambridge Toxicology's last request because Cambridge Toxicology knew in October 2002 of sufficient facts to assert its newer claims and any delay would cause prejudice to the defendants. Cambridge Toxicology contends that the district court erred in not allowing it to file a third amended complaint after the court continued the trial "without date." We review the denial of a motion to amend for abuse of discretion. *S&W Enters., LLC v. Southtrust Bank of Ala.*, 315 F.3d 533, 535 (5th Cir. 2003).

Federal Rules of Civil Procedure Rule 16(b) governs amendment of pleadings after the expiration of a scheduling order deadline and requires a showing of good cause to amend the order. Cambridge Toxicology acknowledges this standard but rests its argument on the more liberal Rule 15. Cambridge Toxicology contends that it lacked sufficient information to plead fraud with particularity any earlier than November 2003 because the defendants engaged in discovery abuses, which prevented it from uncovering pertinent facts. The district court and magistrate judge properly rejected this argument. *See Hawthorne Land Co. v. Occidental Chem. Corp.*, 431 F.3d 221, 228 (5th Cir. 2005). For this reason, there was no abuse of discretion in denying Cambridge Toxicology's motion for leave to amend.

E.

13

Cambridge Toxicology appeals the district court's dismissal of its second complaint and grant of the defendants' motion to strike Cambridge Toxicology's Reply to Counterclaim, Counterclaim, and Third-Party Demand. Relying on *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947 (5th Cir. 1997), the court dismissed Cambridge Toxicology's second complaint as duplicative litigation. *See id.* at 950-51 (holding that substantial overlap between two cases required for consolidation or dismissal, but suits and parties need not be identical). The standard of review in this court for the dismissal of duplicative litigation is not a settled matter, but other courts review for abuse of discretion. *See Curtis v. Citibank, N.A.*, 226 F.3d 133, 140 (2d Cir. 2000). Because the two cases were already consolidated, the court found that Cambridge Toxicology's second complaint substantially overlapped with the original action but preserved Cambridge Toxicology's claims that arose after the filing of the original complaint. *See Curtis*, 226 F.3d at 138.

Cambridge Toxicology argues that this court should review the ruling de novo because the district court dismissed the second complaint based on the doctrine of res judicata. Cambridge Toxicology's argument overlooks that duplicative litigation is a separate and distinct basis for dismissal. The district court further explained why Cambridge Toxicology's conduct was duplicative in this action:

> The Court finds it must reiterate that point for what it fervently hopes is the last time: [Cambridge Toxicology] was not allowed to add the [Litigation Group] as a party to [the first lawsuit] because its undue delay in seeking to amend prejudiced the defendants. [Cambridge Toxicology] was not allowed to add the [Litigation Group] to [the second lawsuit] for the same reason. [Cambridge Toxicology] will not be allowed to assert a third party demand against the [Litigation Group], nor to use this third party demand to escape the doctrine of res judicata. If [Cambridge Toxicology] had wished to sue the [Litigation Group], it had an opportunity to do so in 2002. It missed that opportunity.

14

Based on our review of the record, Cambridge Toxicology's second suit attempts to circumvent the district court's previous adverse rulings.

This court reviews a motion to strike for abuse of discretion. *McCorstin v. U.S. Dep't of Labor*, 630 F.2d 242, 244 (5th Cir. 1980); *see also BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007). For the same reasons stated above with respect to the duplicative litigation issue, the district court's decision to strike Cambridge Toxicology's Reply to Counterclaim, Counterclaim, and Third-Party Demand, was also not an abuse of discretion. This pleading also essentially attempts to circumvent the court's multiple denials. The court granted the defendants' motion to strike because Cambridge Toxicology's pleadings "constitute more of the patently duplicative litigation that has run rampant throughout this litigation. . . . [Cambridge Toxicology] does not have the right to use its reply and counterclaim to circumvent or blatantly ignore the Court's prior rulings."

Federal Rules of Civil Procedure Rule 12(f) allows the court to strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The district court's judgment constitutes an appropriate use of the court's discretion to strike "redundant, immaterial, [and] impertinent" pleadings under Rule 12(f). Based on the record, these issues had been repeatedly decided by the court, and it properly refused to entertain the same issues again cloaked as newly raised claims.

F.

Cambridge Toxicology contends that the district court erred by failing to either order Defendants Reich and Fleming to appear at trial or default them. Defendants argue that the court correctly concluded that it could not order the defendants to appear because they were not within the

15

court's subpoena power. Thus, the court lacked a basis upon which to default the defendants because they appeared at trial through counsel. This court reviews a district court's decision on entry of a default judgment for abuse of discretion. *See Smith v. Smith*, 145 F.3d 335, 344 (5th Cir. 1998).

The parties dispute the implications of *GFI Computer Indus., Inc. v. Fry*, 476 F.2d 1 (5th Cir. 1973), in which the court held that entry of default was not warranted where the court had no power to force a defendant outside its subpoena jurisdiction to personally appear at trial. *Id.* at 5. *GFI* controls this issue. Accordingly, the district court did not abuse its discretion by refusing to order the defendants to appear at trial or enter a default judgment.

G.

This court reviews de novo the district court's denial of a motion for JMOL, applying the same standards as the district court. *See Adams v. Groesbeck Indep. Sch. Dist.*, 475 F.3d 688, 690 (5th Cir. 2007). Judgment as a matter of law is appropriate only when a "reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). The jury found that Cambridge Toxicology performed its obligations under the control study agreement, and the district court denied the defendants' post-trial motions because the jury was entitled to credit portions of Dr. Schrager's testimony in which he stated that he had completed a publishable study and a report. Defendants contend that Cambridge Toxicology never produced the control study. They cite Dr. Schrager's trial testimony in which he admits that the study was 99% complete when he stopped working on it and later admitted that he never gave the study to the defendants.

In response, Cambridge Toxicology points to several portions of Dr. Schrager's testimony upon which the jury could have based its verdict. Dr. Schrager testified that the study was completed

16

and that the data was of publishable quality. While not physically ready for publication, he stated that the information in the database met the criteria for publication in a scientific journal. He claimed that the Rule 26 supplemental report, which he submitted to the defendants, was exactly what was contemplated by the control study agreement. Despite the conflicting testimony, the evidence presented at trial in support of Cambridge Toxicology's position was sufficient to sustain the jury's verdict. *See, e.g., Gomez v. St. Jude Med. Daig Div. Inc.*, 442 F.3d 919, 937 (5th Cir. 2006).

Defendants also contend that there was no meeting of the minds between the parties, and thus no contract, regarding the control study. The jury found otherwise, and the district court agreed, noting that there was conflicting testimony on whether the parties understood that the study was to be published.

More specifically, defendants argue that they contracted for a published study and that Dr. Schrager never communicated to them that he could not produce a publishable study within the specified time frame. Dr. Schrager testified at trial that there was no possibility to complete a published study before trial and that he never discussed this with the defendants. Defendants point to the testimony of two attorneys, stating that they contracted for a peer-reviewed published study in a scientific journal. Thus, they argue, there was no meeting of the minds. Cambridge Toxicology responds that the jury could have credited the testimony of one of the attorneys in which he acknowledged that the study could not be published prior to trial. Moreover, Dr. Schrager testified that he had fulfilled Cambridge Toxicology's contractual obligations by providing the unpublished study.

Under these circumstances, the jury was entitled to infer from this conflicting evidence that the defendants were aware that the terms of the control study agreement did not include a published study. *See Gomez*, 442 F.3d at 937.

H.

Defendants next argue that the judgment incorrectly states that the control study agreement is premature. The jury found as to count one that the defendants did not owe Cambridge Toxicology any amounts under the control study agreement. As to count three, the jury found that the claims for payment under the control study agreement were premature. Defendants contend that the jury's finding as to count one rendered irrelevant the jury's finding regarding prematurity. Cambridge Toxicology responds that the defendants maintained this defense throughout the litigation and the issue was contested in the case. Cambridge Toxicology further argues that the jury's finding of prematurity explains why the jury found that both parties had fulfilled their obligations under the control study agreement. Characterizing the defendants' interpretation as plausible, the district court nonetheless rejected this contention because both sides had approved the verdict form and the defendants had requested the prematurity interrogatory. The judgment accurately reflects the jury's finding, and therefore, the district court's ruling was not an abuse of discretion. *See Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005).

Additionally, defendants argue that the verdict is inconsistent because the jury found that the claims under the control study agreement were premature but that the claims under the individual evaluations agreement were not. The district court satisfied its obligation, to reconcile an apparent inconsistency, by explaining that there were two separate and distinct agreements involved. *See*

18

*Richard v. Firestone Tire & Rubber Co.*, 853 F.2d 1258, 1260 (5th Cir. 1988) (holding that district courts have "wide discretion" to decide if a jury's answers are clear).

I.

This court reviews a district court's award of sanctions under § 1927 for abuse of discretion. *Id.* "A district court abuses its discretion if it awards sanctions based on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Id.* The district court sanctioned Cambridge Toxicology's counsel, Paul Miniclier, pursuant to 28 U.S.C. § 1927:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

*Id.* Section 1927 requires "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court." *Proctor & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 525 (5th Cir. 2002). The district court must make detailed factual findings. Specifically, the court must "(1) identify sanctionable conduct and distinguish it from the reasons for deciding the case on the merits, (2) link the sanctionable conduct to the size of the sanctions, and (3) differentiate between sanctions awarded under different statutes." *Id.* at 526 (footnotes omitted).

Finding that Miniclier had displayed recklessness, bad faith, and improper motive, the district court thoroughly recounted Miniclier's unreasonable and vexatious conduct: (1) Miniclier was denied leave to amend four times; (2) to avoid the effect of these earlier denials, Miniclier filed a second case in an attempt to add the same causes of action; (3) after stern warnings, Miniclier filed a Reply to Counterclaim, Counterclaim, and Third-Party Demand, all of which sought to add the same parties

19

and causes of action; (4) Miniclier's trial conduct warranted a halt to the proceedings and a stern contempt warning; (5) Miniclier informed defendants' counsel after the trial that he would continue the litigation to generate more fees.

The magistrate judge recommended, and the district court accepted, attorney's fees and costs in the amount of $27,000. Defendants sought over $47,000 in fees and costs incurred by (1) responding to Cambridge Toxicology's complaint in the second case; (2) responding to Cambridge Toxicology's motion for leave to amend in the second case; (3) responding to one of Cambridge Toxicology's motions for reconsideration; (4) responding to Cambridge Toxicology's Reply to Counterclaim, Counterclaim, and Third Party Demand; and (5) preparing and prosecuting the motion for fees and costs. In reaching the $27,000 figure, the court made various reductions based on the defendants' billing method and denied costs for preparing the sanctions motions.

The district court's detailed findings satisfy *Proctor & Gamble*. 280 F.3d at 531 ("[The district court] should have isolated the specific unnecessary and dilatory proceedings; it then could have shifted the costs associated with those proceedings."). The court identified numerous offending pleadings filed by Miniclier and awarded sanctions based on the time required by the defendants to respond to those pleadings. The court did not abuse its discretion in sanctioning Miniclier.

J.

The magistrate judge denied costs of almost $2,500 for the preparation and prosecution of the motion for sanctions because "the defendants did not seek fees and costs for the prosecution of the motion for sanctions in the motion itself, and the District Court's [referral] order is silent regarding that." Miniclier argues defendants essentially waived this argument. Defendants argue that this reduction was improper because they were not required to refer to these costs in their sanctions

20

motion. Defendants cite two cases, *Brandt v. Schal Assocs., Inc.*, 960 F.2d 640, 649 (7th Cir. 1992), and *Silva v. Witschen*, 19 F.3d 725, 733 n.15 (1st Cir. 1996), in which the courts awarded costs incurred in establishing Rule 11 violations. Neither case cited by the defendants, however, involved § 1927 or addressed whether such a request for fees must be brought in the sanctions motion itself. Accordingly, inasmuch as the defendants did not request these fees in their sanctions motion and the district court did not refer this issue to the magistrate judge, this decision is best left to the trial court's discretion and should be left undisturbed.

K.

The magistrate judge also reduced the award by 12.5% ($3850) for the defendants' lack of billing judgment. *See Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 769 (5th Cir. 1996) ("The proper remedy when there is no evidence of billing judgment is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment."). The magistrate judge concluded that the defendants rounded up because they billed in quarter-hour increments. Defendants contend that Miniclier never argued that the award should be reduced for lack of billing judgment; that they exercised billing judgment by writing off 4.6% over the history of billing in the matter; and that they billed in quarter-hour increments in accordance with their billing arrangement. However, defendants cite no cases in which a reduction in fees for quarter-hour billing was deemed improper. Accordingly, we affirm the district court's reduction. *See id.* at 770 (affirming 15% reduction for lack of billing judgment).

## III. CONCLUSION

For the foregoing reasons, we affirm the district court's judgment on all issues presented by both parties in this appeal.

21