# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 14, 2011

No. 10-30710

Lyle W. Cayce
Clerk

Ormet Primary Aluminum Corporation

Plaintiff-Appellee/Cross-Appellant

v.

Ballast Technologies, Inc.

Defendant-Appellant/Cross-Appellee

---

Appeals from the United States District Court
for the Eastern District of Louisiana
(09-CV-6726)

---

Before WIENER, BENAVIDES, and STEWART, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellee/Cross-Appellant Ormet Primary Aluminum ("Ormet") sued Defendant-Appellant Ballast Technologies ("Ballast") for unpaid storage services at Ormet's bulk marine terminal. Ormet also sought attorneys' fees under the Louisiana Open Account Statute.[1] Ballast countered that Ormet's claim was a compulsory counterclaim in a previous proceeding involving Ormet, Ballast, and a third party, Universal Minerals. Ballast reasoned that Ormet had

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] LA. REV. STAT. ANN. § 9:2781.

No. 10-30710

waived any right to unpaid fees for storage services by failing to make that claim in the earlier proceeding. The district court disagreed with Ballast, concluding that Ormet's claim was not a compulsory counterclaim, and granted Ormet's motion for summary judgment. The district court nevertheless held that Ormet was not entitled to attorneys' fees. We agree with the district court that Ormet's claim was not a compulsory counterclaim in the previous proceeding and affirm its grant of summary judgment in favor of Ormet. Disagreeing with the district court's determination that Ormet was not entitled to attorneys' fees, however, we reverse that holding and remand for further proceedings consistent herewith.

## I. FACTS & PROCEEDINGS

*A. Facts*

Ormet owns and operates Burnside Terminal, a bulk marine facility located on the Mississippi River in Louisiana. Ormet provides stevedoring and storage services at the Burnside Terminal. Starting in 2004, Ballast delivered cargo to the Burnside terminal for storage on a number of occasions.

In 2005 Ormet entered into a written contract with Universal Minerals to provide stevedoring services for the cargo on Universal Minerals's vessels. Early the following year, a ship chartered and operated by Universal Minerals, the *M/V Biloxi Belle*, discharged magnetite ore owned by Ballast for storage at Ormet's Burnside Terminal. A few months later, additional magnetite ore owned by Ballast was stored at Ormet's terminal. Ballast failed to pay storage fees for either of those shipments from October 1, 2007 to January 8, 2008. Beginning in January 2008, Ormet made repeated attempts to collect the outstanding fees from Ballast, culminating in a final demand for payment by certified mail made in July 2009. Ormet calculated that Ballast had accumulated $145,290.77 in storage fees on its account by that time. In response to the final demand, Ballast offered a check for $10,919.92 marked "in full

2

payment of all outstanding handling, discharge and/or storage charge balances." Ormet refused to accept this payment.

In the meantime, a controversy had arisen regarding the docking of the *Biloxi Belle*. In 2006, when that ship approached the Burnside Terminal, it was forced to wait while another ship was loaded. The terminal's conveyor system was damaged during the loading of the other ship, disrupting the normal schedule of discharge and loading at the terminal. As a result, the *Biloxi Belle* had to wait for almost a month before its cargo could be unloaded. The delay caused Universal Minerals, the charterer of the vessel, to incur demurrage under the terms of its charter agreement with the ship's owners.

## B. Proceedings

The owners of the *Biloxi Belle* instituted arbitration proceedings against Universal Minerals to recover the demurrage. Neither Ballast nor Ormet were parties to this arbitration, and Universal Minerals was solely responsible, including the portion of the arbitration award for the demurrage owed, interest thereon, the costs of arbitration, and the vessel owners' attorneys' fees. Universal Minerals then invoked admiralty jurisdiction and filed suit against Ormet in federal district court, seeking damages for the demurrage charges, interest on those charges, attorneys' fees incurred by the owners of the ship, arbitration fees, Universal Minerals's attorneys' fees incurred at the demurrage arbitration, and demurrage on ten barges chartered by Universal Minerals. All of these damages were for costs incurred solely by Universal Minerals and none by Ballast. Ballast was joined as a plaintiff in this suit, which ultimately settled before going to trial. The settlement agreement among the three parties did not require Ormet to release or waive any rights against Ballast.

After the underlying case settled and Ormet's repeated demands for payment of storage fees from Ballast went unheeded, Ormet sued Ballast in

No. 10-30710

district court. Ballast did not contest that Ormet provided the services invoiced, contending instead that Ormet's failure to plead this claim as a counterclaim in the previous suit barred Ormet from suing Ballast on that claim in the instant action. The district court disagreed and granted Ormet's motion for summary judgment, but the court denied Ormet's claim for attorneys' fees. Ballast timely filed a notice of appeal, after which Ormet filed a notice of cross-appeal.

## II. STANDARD OF REVIEW

We review a district court's summary judgment de novo.[2] Summary judgment is appropriate only when there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[3]

## III. ANALYSIS

### A. Compulsory Counterclaim

We agree with the district court that Ormet's claim against Ballast for the unpaid storage services was not a compulsory counterclaim in the initial lawsuit involving Universal Minerals. Therefore, Ormet was not required to assert that claim in the first suit and was free to bring it against Ballast in the instant suit.

We apply the "logical relation" test to determine whether a counterclaim was compulsory.[4] There is a logical relationship between a potential counterclaim and the principal claim when "the same operative facts serves as the basis of both claims or the aggregate core of facts upon which the claim rests

---

[2] *In re Am. River Transp. Co.*, 490 F.3d 351, 353 (5th Cir. 2007) (citing *Holmes v. Atl. Sounding Co.*, 437 F.3d 441, 445 (5th Cir. 2006)); *Thurman v. Sears, Roebuck & Co.*, 952 F.2d 128, 131 (5th Cir. 1992).

[3] FED. R. CIV. P. 56(a).

[4] *Plant v. Blazer Fin. Servs., Inc. of Ga.* 598 F.2d 1357, 1361 (5th Cir. 1979) (citations omitted).

activates additional legal rights, otherwise dormant, in the defendant."[5] Ballast contends that its 2007 contract with Ormet was based largely on the 2005 contract between Ormet and Universal Minerals, on which the previous trial was grounded. Even if this assertion were true, other courts have noted that, alone, such a contractual relationship is not sufficient to make a counterclaim compulsory.[6] Furthermore, the two claims at issue here arise from different sets of operative facts: The prior case arose out of the botched docking and unloading of the *Biloxi Belle*; this case arose out of Ballast's failure to pay for storage services provided by Ormet. The fact that the cargo stored at the Burnside Terminal traveled there on the *Biloxi Belle* is irrelevant to the instant case.

Ballast also contends that Ormet's attorney, Richard Foster, conceded during the settlement negotiations of the previous case that Ormet's claims against Ballast would have been compulsory and that Ballast relied on that concession. Ballast's contention is incorrect: Ormet did not concede that its claims were compulsory counterclaims, either through Foster or anyone else. The settlement agreement between Ormet, Ballast, and Universal Minerals does not contain any release language pertaining to Ormet's claims, even though it does contain such language regarding Ballast and Universal Minerals's claims. Furthermore, although Foster wrote in an email to Ballast's counsel that any claims by Ormet against Ballast "would have been compulsory if [any] existed[,]" he immediately followed up with another email less than two hours later clarifying that Ormet did have claims against Ballast and that he did not consider these claims to be compulsory counterclaims.

---

[5] *Id.* (citation omitted).

[6] *See, e.g., Plymouth Yongle Tape (Shanghai) Co. v. Plymouth Rubber Co.*, 683 F. Supp. 2d 102, 110 (D. Mass 2009); *Cont'l Fed. Sav. & Loan Ass'n v. Delta Corp. of Am.*, 71 F.R.D. 697, 701 (W.D. Okla. 1976).

No. 10-30710

Because the underlying facts of the two claims are largely unrelated, and Ormet did not concede that its counterclaims were compulsory, the district court correctly ruled that Ormet's claims were not compulsory and therefore could be brought in the instant case. Largely for the reasons expressed by the district court, we affirm its grant of summary judgment in favor of Ormet.

*B. Attorneys' Fees*

We conclude, however, that the district court erred when it denied attorneys fees to Ormet. When, under the Louisiana Open Account Statute, (1) the account debtor fails to pay the outstanding balance on such an account within thirty days after the account creditor sends a written demand for the amount owed, and (2) a judgment on that claim is thereafter rendered in favor of that creditor, it is entitled to reasonable attorneys' fees.[7] In this case, Ormet complied with those statutory requirements: It sent Ballast a certified letter in July 2009 requesting full payment of $145,290.77 and, when payment was not forthcoming, Ormet sued and obtained a judgment against Ballast for that precise amount. The only remaining question is whether the dealings between Ormet and Ballast constituted an open account.[8]

The Louisiana Supreme Court has cautioned that the Open Account Statute must be construed "strictly [] because the award of attorney fees is exceptional and penal in nature."[9] The relevant Louisiana statute defines an

---

[7] LA. REV. STAT. ANN. § 9:2781(A).

[8] *See Jacobs v. Loeffelholz*, 647 So. 2d 1282, 1284 (La. Ct. App. 1994) ("The evidence adduced at trial supports a finding that the plaintiff scrupulously complied with the technical requirements of LA. REV. STAT. § 9:2781 in that he sent a proper demand letter and secured a judgment for the exact amount specified in his demand. Thus, if the agreement constitutes an open account, the plaintiff is entitled to an award of attorneys fees for securing a favorable judgment." (citing *Scarborough v. Nelson*, 371 So. 2d 1261 (La. Ct. App. 1979))).

[9] *Frank L. Beier Radio, Inc. v. Black Gold Marine, Inc.*, 449 So. 2d 1014, 1015-16 (La. 1984) (citations omitted).

6

No. 10-30710

open account to "include any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties excepted future transactions."[10] Louisiana courts have defined an open account alternatively as "an account in which a line of credit is running and is open to future modification because of expectations of prospective business dealings."[11] And, the Louisiana Supreme Court has noted that, "[u]nder a plain reading of that statute, there is no requirement that there must be one or more transactions between the parties, nor is there any requirement that the parties must anticipate future transactions."[12]

In concluding that Ormet's claim was not on an open account, the district court relied heavily on *Construction Testing Labs, Inc. v. Wal-Mart Stores, Inc.*,[13] in which the district court determined that "deferred payment of 30 days does not establish an open account where . . . each transaction had definitive terms."[14] The dealings between Ballast and Ormet in this case are distinguishable from those between the parties in *Construction Testing Labs*, however. Ormet did not merely defer the payment owed by Ballast; it also established an applicable interest rate for the eventuality that Ballast would not pay within the required period. A hallmark of an open account is that "[t]he total cost, unlike a contract, is generally left open or undetermined, although the rate for specific services

---

[10] LA. REV. STAT. ANN. § 9:2781(D).

[11] *Tyler v. Haynes*, 760 So. 2d 559, 563 (La. Ct. App. 2000).

[12] *Frey Plumbing Co. v. Foster*, 996 So. 2d 969, 972 (La. 2008).

[13] No. 08-0569, 2009 WL 2214678 (W.D. La. July 23, 2009).

[14] *Id.* at *3 (citing *Cambridge Toxicology Grp., Inc. v. Exnicios*, 495 F.3d 169, 174 (5th Cir. 2007)).

may be fixed, such as an hourly rate."[15]   The account in question here was left open or undetermined because the total amount depended on how long Ballast should delay payment to Ormet and how much interest would accrue.

As the obligation in question constituted an open account because of its undetermined total, and as Ormet has complied with all requirements of the Louisiana Open Accounts Statute, it is entitled to attorneys' fees.

## IV.  CONCLUSION

The claim brought by Ormet in the instant case was not a compulsory counterclaim in the previous case involving Ormet, Ballast, and Universal Minerals.  Summary judgment in favor of Ormet was therefore appropriate and is AFFIRMED.  Ormet is also entitled to attorneys' fees, however, because it has satisfied all applicable requirements under Louisiana's open accounts law.  We REVERSE on this issue and REMAND for the district court to calculate attorneys' fees based on the Louisiana Open Account Statute and to amend and re-enter its summary judgment accordingly.

AFFIRMED in part; REVERSED and REMANDED in part.

---

[15] *Mid-S. Analytical Labs, Inc. v. Jones, Odom, Spruill & Davis, LLP*, 912 So. 2d 101, 107 (La. Ct. App. 2005).