# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-30023

United States Court of Appeals
Fifth Circuit

**FILED**
November 8, 2016

Lyle W. Cayce
Clerk

KOURTNEY S. RODGERS,

Plaintiff - Appellant

v.

STATE OF LOUISIANA BOARD OF NURSING,

Defendant - Appellee

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:15-CV-615

Before JOLLY, BARKSDALE, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

Louisiana charges the State of Louisiana Board of Nursing ("Board") with regulating the practice of nursing, licensing nurses, and accrediting nursing schools. In carrying out these functions, the Board has established criteria for accrediting and terminating the accreditation status of Louisiana nursing schools.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-30023

One of the Board's criteria is that each nursing program must maintain an eighty percent first time passage rate by its candidates on the National Council Licensure Examination for Registered Nurses. If a program fails to achieve this passage rate, it is placed on conditional approval. A program exhausts its ability to continue on a probationary status after three consecutive years of conditional approval. And, at any time during this probationary period, the Board may order a program to cease admitting new nursing students and/or begin involuntary termination.

As of February 2015, the Grambling State University School of Nursing ("Grambling") had been on conditional approval for three consecutive years. Consequently, when the Board verified that Grambling's pass rate for 2014 and the first quarter of 2015 was again below the eighty percent threshold requirement, the Board instructed Grambling to cease admitting new students and involuntarily terminate its program.

Kourtney Rodgers, a Grambling student, filed a complaint against the Board. She claimed that the Board violated the Sherman Act, 15 U.S.C. § 1, and the Clayton Antitrust Act, 15 U.S.C. § 15(a), by restraining trade and commerce with respect to nursing education because the Board singularly relied upon an eighty percent passage rate to terminate Grambling's program.

On September 15, 2015, the district court held a telephone status conference related to Rodgers' motion for a temporary restraining order ("TRO"). The court set deadlines and page limits for opposition to the TRO, as well as for any other responsive motions in the case. It then ordered the parties to file opposition to the latter within ten days of the filing of the original motion, setting a ten-page limit for opposition briefs. These instructions were orally given and put into the text of a Briefing Notice and a docket entry.

On September 25, 2015, the Board filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). To the point, the Board

2

contended that the court lacked subject matter jurisdiction because it was entitled to Eleventh Amendment immunity ("sovereign immunity") as an arm of the state under the test in *Earles v. State Bd. of Certified Pub. Accountants*, 139 F.3d 1033 (5th Cir. 1998). The Board also averred that Rodgers failed to state a claim because it was entitled to state action immunity ("*Parker* immunity") given that *N.C. State Bd. of Dental Exam'rs v. F.T.C.*, 135 S. Ct. 1101 (2015) ("*N.C. Dental Board*"), asserted by Rodgers, was distinguishable.

Pursuant to the district court's instructions, Rodgers was allowed a ten-page opposition to the Board's motion to dismiss, which was due on October 5, 2015. She filed a twenty-page response on October 9, 2015. The Board immediately filed a motion to strike the response.

The district court granted the Board's motion to strike on October 26, 2015. The court explained that not only was Rodgers' response double the page limit, it was also four days late. Moreover, Rodgers failed to file a timely request for an extension of time or to seek leave to exceed page limits before filing, as local rules required.

On December 18, 2015, the district court granted the Board's motion to dismiss the complaint. Because Rodgers had no substantive response to the Board's motion, the court independently researched and analyzed the legal issues and objectively formulated arguments that Rodgers was attempting to make in her brief.[1] The court properly began its analysis by assessing the Board's challenge to subject matter jurisdiction.[2] It found that sovereign immunity and *Parker* immunity are distinct defenses and held that it had no

---

[1] Rodgers' brief is found in the record as an exhibit attached to her combined motion of October 16, 2015. It is clear that although the district court did not formally allow Rodgers' brief, the court was familiar with the arguments that it contained, referencing them in its dismissal order.

[2] *E.g.*, *United States v. Tex. Tech. Univ.*, 171 F.3d 279, 286–87 (5th Cir. 1999).

No. 16-30023

subject matter jurisdiction because the Board was entitled to sovereign immunity under the *Earles* test.

Rodgers has timely appealed. She contends that the district court erred because it: (1) abused its discretion in striking her response to the Board's motion to dismiss; and (2) used the wrong standard for sovereign immunity.[3]

## I.

## A.

Because Rodgers seems to make it a cornerstone of her appeal, we begin by considering whether the district court erred by striking Rodgers' response to the Board's motion to dismiss. We review the grant of a motion to strike for an abuse of discretion. *Cambridge Toxicology Grp., Inc. v. Exnicios*, 495 F.3d 169, 178 (5th Cir. 2007) (citations omitted).

Rodgers asserts that the district court erred in striking her response—which was admittedly four days late and twice the page limit—because there is no evidence that her failure to comply with the court's directives prejudiced the Board or caused undue delay of the proceedings.

Taking all of Rodgers' arguments into account, we hold that the district court did not abuse its discretion in granting the Board's motion to strike. As Rodgers points out, case law is clear: federal judges have the inherent power to manage their own proceedings and control the conduct of those who appear before them. *E.g.*, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–44 (1991) (citations omitted); *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1417 (5th Cir. 1995) (citations omitted). The court clearly and unambiguously established page limits and deadlines both through oral instructions and in the Briefing

---

[3] As Rodgers' counsel clarified at oral argument, she is not challenging whether the district court erred in: (1) applying sovereign immunity instead of *Parker* immunity; or (2) analyzing sovereign immunity, if we find that the court used the proper test.

No. 16-30023

Notice and a docket entry. Local rules explained how to proceed if Rodgers' counsel sought additional time and pages. Furthermore, Rodgers was not prejudiced by the district court's dismissal. The court independently researched and analyzed the legal issues, going so far as to attempt to formulate arguments on Rodgers' behalf. And nothing indicates that the court would have altered its judgment if it had not stricken Rodgers' response. *See Soliz v. Bennett*, 150 F. App'x 282, 284–85 (5th Cir. 2005). Accordingly, the court did not abuse its discretion in striking Rodgers' brief.

B.

Rodgers further argues that the district court erred because it did not import the second prong of the *N.C. Dental Board* test[4] from *Parker* immunity to determine whether the Board was shielded by sovereign immunity. We review a district court's grant of a motion to dismiss under Rule 12(b)(1) *de novo*. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citation omitted).

In the context of antitrust suits, courts have recognized that both *Parker* immunity and sovereign immunity are potential defenses for state entities. *E.g.*, *Earles*, 139 F.3d at 1034, 1044 (holding a state regulatory board immune from federal and state antitrust laws under both sovereign immunity and *Parker* immunity and its members immune from state antitrust laws under sovereign immunity and federal antitrust laws under *Parker* immunity). We conclude that sovereign immunity and *Parker* immunity are distinct doctrines,

---

[4] *Cal. Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, established a two-prong test for *Parker* immunity: (1) "the challenged restraint must be 'one clearly articulated and affirmatively expressed as state policy'"; and (2) "the policy must be 'actively supervised' by the State itself." 445 U.S. 97, 105 (1980) (citation omitted). *N.C. Dental Board* clarified when "[a] nonsovereign actor controlled by market participants" would be "cloaked with *Parker* immunity" under the *Midcal* test. *N.C. Dental Board*, 135 S. Ct. at 1110–12. Consequently, we refer to this test as the *N.C. Dental Board* test.

providing different—if sometimes overlapping—spheres of protection from private federal antitrust claims. Thus, their tests are not coterminous.

First, the doctrines differ in that they derive from different sources. Sovereign immunity is derived primarily from the Eleventh Amendment. *E.g.*, *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 64 (1996). *Parker* immunity is derived from statutory construction, legislative intent, and judicial deference to federalism. *Cmty. Commc'ns Co. v. City of Boulder, Colo.*, 455 U.S. 40, 53 (1982); *Parker v. Brown*, 317 U.S. 341, 350–51 (1943).

Second, the doctrines differ in that Congress cannot abrogate sovereign immunity through antitrust legislation. Federal antitrust laws are promulgated under the authority of the Commerce Clause. *E.g.*, *Parker*, 317 U.S. at 348–49. Congress may not abrogate states' sovereign immunity through federal legislation under the Commerce Clause. *Seminole Tribe*, 517 U.S. at 64–66.

Third, case law implicitly recognizes that sovereign immunity and *Parker* immunity are separate and independent sources of immunity from private federal antitrust claims. *E.g.*, *Goldfarb v. Va. State Bar*, 421 U.S. 773, 791–92, 792 n.22 (1975). In *N.C. Dental Board*, for example, the Supreme Court held that a state regulatory board with a majority of members who "engaged in the active practice of the profession it regulate[d]" was not protected from Sherman Act liability by *Parker* immunity because it was not actively supervised by the state. *N.C. Dental Board*, 135 S. Ct. at 1107, 1114, 1116–17. Importantly, the Court clarified that its decision was limited: "members of regulated occupations" who "participat[ed] in state government" could sometimes look beyond *Parker* immunity to sovereign immunity as a defense. *Id.* at 1115 (citing *Goldfarb*, 421 U.S. at 792 n.22).

Fifth Circuit case law also demonstrates that sovereign immunity and *Parker* immunity are independent doctrines. In *Earles*, this Court held that

sovereign immunity and *Parker* immunity insulated a state regulatory board and its members from "scrutiny . . . under federal [and state] antitrust laws." *Earles*, 139 F.3d at 1034, 1044. The Court first analyzed sovereign immunity, holding that it protected the board from all claims and its members from state law claims, but not federal antitrust laws. *Id.* at 1039–40. The Court then analyzed *Parker* immunity, holding that it shielded the board and its members "from federal antitrust laws." *Id.* at 1034, 1044.

Because sovereign immunity and *Parker* immunity are distinct doctrines, we reject Rodgers' argument, which seeks to merge their respective tests. Rodgers repeatedly points to *N.C. Dental Board* for the proposition that the sovereign immunity analysis is now governed by *N.C. Dental Board*'s two-prong test. But, in *N.C. Dental Board*, the Supreme Court did not address sovereign immunity except to point out that sovereign immunity may provide an alternative defense in some cases. *N.C. Dental Board*, 135 S. Ct. at 1115 (citing *Goldfarb*, 421 U.S. at 792 n.22). And Rodgers, who bears the burden of showing that jurisdiction exists, has never pointed to any other authority holding that, in the wake of *N.C. Dental Board*, the two-prong test for *Parker* immunity should be superimposed on the sovereign immunity analysis. *Ramming*, 281 F.3d at 161 (citation omitted). Because the tests for sovereign immunity and *Parker* immunity are not coterminous, the district court did not err in analyzing the Board's sovereign immunity claim using the *Earles* test unmodified by *N.C. Dental Board*.

## II.

For the foregoing reasons, the judgment of the district court is AFFIRMED.